Paul Ivan **BIRZON**, Appellant,
In Behalf of Morris Satz

v.

Edward S. **KING**, United States Marshal
and Hon. Michael A. Amico, Sheriff
of Erie County, Appellees.

No. 117, Docket 72–1276.

United States Court of Appeals,
Second Circuit.

Argued Nov. 1, 1972.

Decided Dec. 6, 1972.

Paul Ivan Birzon, Buffalo, N. Y. (Runfola & Birzon, Buffalo, N. Y., on the brief), for appellant.

Philip B. Abramowitz, Asst. U. S. Atty. (John T. Elfvin, U. S. Atty. for Western District of New York, on the brief), for appellees.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Paul Birzon brought this habeas corpus petition in the Western District on behalf of his client, Morris Satz. In 1963 Satz was sentenced by Judge Henderson to five years imprisonment following his conviction for the crimes of theft from interstate shipment and conspiracy. Satz had earlier been convicted in a New York state court for arson in the third degree and burglary in the third degree and was sentenced to a term of imprisonment.

After Satz had served four and a half years of his state term, he was paroled by the state authorities and immediately began to serve his federal sentence. He was subsequently released on parole by the United States Board of Parole, and thus came under the concurrent jurisdiction of the federal and state parole authorities. After his release, Satz resumed his earlier duties at the Stratford Arms Hotel in Buffalo, New York, of which he was part owner.

On July 17, 1970, Satz was arrested by state authorities for alleged parole violations, including the prohibition against associating with persons having a criminal record. He was returned to state prison and later was granted a

state parole revocation hearing. The parole violation charge was predicated on information contained in a parole violation report prepared by a state parole officer and based on information received from informants. Prior to the hearing, the state parole authorities were ordered by a state judge to furnish Satz with a copy of this report to assist him in defending against the charge. The state authorities refused to comply with this order. At the close of the parole revocation hearing, Satz's counsel moved to strike all charges based on information that the parole authorities refused to supply in accordance with the state court order. While this motion was being considered by the state parole authorities, Satz was conditionally released from state custody, at which time he was taken into custody on a federal parole violator warrant and committed to a federal correctional facility.

The federal warrant charged Satz with having violated his parole by associating with several named persons having criminal conviction records. This charge was based solely on the allegations in the state parole violation report. The warrant did not indicate the times and places where the alleged associations occurred. Satz's counsel was not permitted to see the state report; but the hearing officers did state that, for purposes of the parole violation charge, the alleged associations would be deemed to have occurred on July 17, 1970 in the City of Buffalo. Beyond this, the hearing officer did not particularize the charges against Satz.

At the hearing, the parole board introduced no evidence but relied exclusively on the state parole violation report. The parolee, Satz, was neither given an opportunity to cross-examine the informants who accused him of violating his parole nor informed of their

identity. Satz took the stand to deny violating his parole and to account for his activities on the day that he was charged with associating with the named individuals. He also called two witnesses to corroborate his testimony.[1] After the hearing, the parole board revoked Satz's parole and informed him of its action; but it did not relay to him the findings that it made and upon which it relied in reaching its decision to revoke the parole.

After the revocation decision, Birzon, Satz's lawyer, petitioned the district court on his behalf for habeas corpus. The court denied the writ and Birzon brings this appeal on Satz's behalf.

Birzon makes two major arguments with which we must contend on this appeal. Initially, he asserts that the parole condition that Satz was alleged to have violated, condition no. 11,[2] is unconstitutional. Secondly he argues that the refusal to permit Satz to confront and cross-examine the informants who supplied information against him, the refusal to disclose to Satz the evidence that was being used against him, and the failure of the parole board to provide a statement of the evidence on the basis of which it determined to revoke Satz's parole resulted in a denial of the minimum requirements of due process.

 We reject appellant's suggestion that condition no. 11 of Satz's parole, which forbids the parolee to associate with persons having criminal records, is unconstitutional. He argues that the condition is unconstitutionally vague in that a person of common understanding cannot know what actions are forbidden. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Appellant predicates his vagueness argument on the asserted uncertainty of the terms "associate" and "criminal record" in the condition. We

---

1. The testimony of the two witnesses did not rebut the allegations in the state report for this testimony did not conclusively establish that Satz did not in fact associate with the three named persons on July 17, 1970.

2. Condition no. 11 provides:
 You shall not associate with persons who have a criminal record unless you have permission of your probation officer. Nor shall you associate with persons engaged in criminal activity.

cannot agree that the parole condition is so vague as to infringe due process.

With regard to the term "associate," we believe that the meaning that would more often occur to men of ordinary intelligence is something more than merely a fleeting or casual acquaintance.[3] Therefore, we hold that the word "associate" in the parole condition is not unconstitutionally vague, for "[t]he requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." Sproles v. Binford, 286 U.S. 374, 393, 52 S.Ct. 581, 587, 76 L.Ed. 1167 (1932). The term is not so uncertain that "men of common intelligence must necessarily guess at its meaning." Connally, supra, 269 U.S. at p. 391, 46 S. Ct. at p. 127. As to the meaning of "criminal record," we are certain that this term would in any event be construed to refer to conviction for crime, which is what was involved here.[4] Therefore, we conclude that the condition was adequately phrased to give the parolee notice that the conduct with which he was charged was proscribed and, thus condition no. 11 is not unconstitutionally vague.[5]

■ Alternatively, appellant argues that condition no. 11 violates Satz's first amendment freedom of association. We regard this argument as frivolous. It has been properly held that the Government can infringe the first amendment rights of prisoners so long as the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose of imprisonment. See Sobell v. Reed, 327 F.Supp. 1294, 1303 (S.D.N.Y., 1971), and cases there cited. On that basis, no one has questioned the Government's power totally to deprive a convicted person of his freedom of association. By the same token, when a convict is conditionally released on parole, the Government retains a substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee. Although a parolee should enjoy greater freedom in many respects than a prisoner, we see no reason why the Government may not impose restrictions on the rights of the parolee that are reasonably and necessarily related to the interests that the Government retains after his conditional release. The restriction here involved is reasonably and necessarily related to the Government's legitimate interests in the parolee's activities and thus does not violate the first amendment.

Appellant's second major contention is that the parole revocation hearing did not conform to the requirements of due process. The Supreme Court in Morris-

3. This is reflected and supported by the general definition given to "associate" in Webster's Third New International Dictionary which defines "associate" as follows:

To join often, in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally.

In Arciniega v. Freeman, 404 U.S. 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971), the Supreme Court was called upon to interpret the term "associate" as used in a federal parole condition. The Court held that the condition was not "intended to apply to incidental contacts between ex-convicts in the course of work on a legitimate job for a common employer." Hence, it appears that the term has been interpreted in accordance with the common understanding that is attached to it.

4. Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct was proscribed. [citation omitted] In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

5. Appellant also suggests that the condition is vague because it does not specify whether scienter is an element of a breach of the condition. Although the Government indicates that the condition is intended to require scienter, we need not resolve this question for we fail to understand how the presence or absence of a scienter requirement can affect the determination on the vagueness issue.

sey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) defined the minimum requirements of due process in parole revocation proceedings. The Court said, at pp. 488–489, 92 S.Ct. at p. 2604:

> Our task is limited to deciding the minimum requirements of due process. They include: . . . (b) disclosure to the parolee of evidence against him; . . . (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); . . . and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Requirements (b) and (f) were clearly not observed here. However, as to (b), the Government notes that the sole evidence against the parolee was the state parole violation report, which was based on statements by confidential informants.[6] The Supreme Court specifically stated that informants need not be disclosed to the parolee "if the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed." p. 487, 92 S.Ct. p. 2603. The Government contends that a particularization of the accusations by the informants would here operate to disclose their identity. Therefore, since the state report indicated that the parolee was a very dangerous person who might try to harm the informants, the Government argues that it should not be necessary for the parole board to disclose the evidence against the parolee. Although this is an interesting and important question, it is one that we cannot now resolve; for, because the parole revocation hearing occurred before the decision in Morrissey v. Brewer, that decision does not govern this appeal. The Court explicitly stated at p. 490, 92 S.Ct at p. 2604 that "[t]he

few basic requirements set out above . . . are applicable to future revocations of parole. . . ." Hence, *Morrissey* is not to be applied retroactively.

■ Even disregarding *Morrissey*, however, we believe that the revocation of Satz's parole failed to conform to the requirements of due process. The evidence against Satz consisted solely of the state parole violation report, which was apparently based on statements by several confidential informants. At the hearing, the board refused to provide Satz with a copy of this report or with the substance of the statements made by the informants, and it refused to disclose their identity in order to permit Satz to confront and cross-examine them. The reason for this refusal was the board's concern for the safety of the informants in light of the statement in the state report that Satz was a very dangerous person. In determining the factual question of whether or not Satz had breached condition no. 11 of his parole, the board was required to decide whether it would believe the informants or the parolee and his witnesses. The infirmity that we see in the hearing and determination by the parole board is that it resolved the credibility issue solely on the basis of the state report, without itself taking the statements from the informants. Thus the board had no way of knowing how reliable the informants were and had no real basis on which to resolve the credibility issue against the parolee and conclude that he did in fact violate condition no. 11 of his parole.

We do not mean to intimate that the board should have taken testimony from the informants at the hearing and given the parolee the opportunity to cross-examine. What we do mean is that the board should have received the information directly from the informants (al-

---

6. It is not entirely clear from the report what allegations contained therein were the product of the observations of the parole officers preparing the report and of other named parole officers and what allegations were the product of statements by informants.

tho gh not necessarily in the presence of the parolee), instead of relying solely on the state report.[7] The board could the. have reached its own conclusions about the relative reliability of the informants' statements and those of the parolee and his witnesses.

Similarly, the board could then have made its own decision about how realistic were the claims of potential danger to the informants or to state parole officers if their identity was disclosed, instead of placing exclusive reliance on the state report. Thus, we hold that, in relying exclusively on the written synopsis in the state report, which was the only evidence of a parole violation, in the face of the parolee's denial and his presentation of the testimony of other witnesses, the revocation of Satz's parole was fundamentally unfair to him and was a denial of due process of law.

We need not resolve the parolee's contention that he should have been permitted to see the state parole report. Any subsequent hearing of this parole violation charge will be governed by *Morrissey* and the board will thus be required to disclose to the parolee so much of the substance of the informants' accusatory statements as it finds consistent with their safety. By the same token, in light of the requirements spelled out in *Morrissey*, the parole board's failure to state the reasons for revoking Satz's parole will not likely be repeated at any subsequent parole revocation hearing.

In light of our discussion of the due process deficiencies in the revocation determination, the decision of the district court must be reversed. Accordingly, we remand the petition to the district court with instructions to issue the writ unless the parole board certifies, within a reasonable time, that it will conduct a new revocation hearing and the board does in fact conduct such a hearing within a reasonable time thereafter.

7. We do not mean to suggest that it would not have been proper for a federal parole officer or some other agent of parole board to take the informants' statements and make a report to the board, which would include an evaluation of the informants' reliability. The problem here was the exclusive reliance on the statements in the state report.

actions provisions of Uniform Commercial Code. Code W.Va. 46–9–101 et seq.

