**UNITED STATES of America, Appellee,**

**v.**

**Salvatore ALBANESE, Appellant.**

**Nos. 831, 832, Dockets 76–1528, 77–1010.**

United States Court of Appeals, Second Circuit.

Argued March 1, 1977.

Decided May 4, 1977.

---

Gerald L. Shargel, New York City (Fischetti & Shargel, New York City, of counsel), for appellant.

Mervyn Hamburg, Atty., Dept. of Justice, Washington, D. C. (David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., Donald F. McCaffrey, Sp. Atty., Brooklyn Strike Force, New York City, of counsel), for appellee.

Before MULLIGAN and OAKES, Circuit Judges, and BRYAN, District Judge.*

OAKES, Circuit Judge:

This appeal raises three points, the first going to the constitutionality of a condition of probation requiring appellant to "associate only with law-abiding persons," the second to the legality of the sentence imposed on appellant, and the third to the constitutionality of sending appellant to prison almost 18 years after commission of the crime. Appeal is from two orders of the United States District Court for the Eastern District of New York, John F. Dooling, Jr., *Judge,* the first revoking probation and directing appellant to complete a ten-year term of imprisonment suspended

---

* Hon. Frederick vanPelt Bryan of the United States District Court for the Southern District of New York, sitting by designation.

on June 6, 1969, and the second denying appellant's motion under Fed.R.Crim.P. 35 to vacate sentence. With one minor modification of the sentence we affirm.

At first blush this case seems remarkable because the underlying crime for which appellant was ultimately sentenced in 1969 was committed in July of 1959. It appears much less so, however, when note is taken that appellant and three others were tried five times before final conviction for hijacking and conspiracy to hijack a truck in interstate commerce, in violation of 18 U.S.C. § 1951.[1] After conviction following the fourth trial, by which time appellant had spent a total of 1,168 days in custody for lack of bail pending trial and retrial, he was sentenced by the late Judge George Rosling on June 19, 1964, to concurrent terms of six years, with no credit for time served.[2] After this conviction was reversed on appeal, appellant was again convicted at his fifth trial. Judge Dooling's sentence following this final conviction was ten years, execution suspended, with probation for five years. Because of a stay during the appellate and collateral review process,

appellant did not sign the probation conditions until May 10, 1972; they were to be in effect for five years from that date.

### Violation of Probation

One of the conditions of appellant's probation was that he "associate only with law-abiding persons." On October 8, 1976, Judge Dooling held that appellant understood the condition and knowingly violated it. The judge thus ordered appellant to appear for sentencing and later directed him to complete a ten-year prison term.

In appealing this ruling and order, appellant does not dispute the sufficiency of the evidence that he associated with persons with criminal records. This evidence, primarily from appellant's probation officer and FBI agents who had appellant under surveillance, was to the effect that on some 40 occasions in the 1973 to 1976 period, he was seen with one or more individuals with criminal records, including two of his former codefendants.[3] Appellant seeks to have the lower court's ruling overturned on the grounds that the condition relating to "law-abiding persons" is unconstitutionally

1. The first trial in May, 1961, ended in a mistrial resulting from a hung jury. The second trial ended in a conviction that was reversed by this court. *United States v. Persico*, 305 F.2d 534 (2d Cir. 1962). The third trial, held in the spring of 1963, resulted in a mistrial. The fourth trial, in early 1964, ended in conviction of all defendants, but, once again, the conviction was reversed. *United States v. Persico*, 349 F.2d 6 (2d Cir. 1965). The fifth trial, held in April and May, 1968, again resulted in the conviction of all defendants, and this conviction was affirmed in *United States v. Persico*, 425 F.2d 1375 (2d Cir.), *cert. denied*, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970). The case was before this court on at least two other occasions. *United States v. Dooling*, 406 F.2d 192 (2d Cir.) (mandamus directing district judge to enter judgment on verdict and sentence defendants), *cert. denied*, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); *United States v. Persico*, 454 F.2d 721 (2d Cir. 1972) (denial of motion for new trial).

2. Until a 1966 amendment to 18 U.S.C. § 3568, the Attorney General had no obligation, except in certain situations not here applicable, to deduct time spent in custody, and the district court apparently lacked power to order that credit be given. *See Lee v. United States*, 400

F.2d 185, 188–89 (9th Cir. 1968). The 1966 amendment was not retroactive. *Zaffarano v. Fitzpatrick*, 404 F.2d 474, 478 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2130, 23 L.Ed.2d 766 (1969); *United States ex rel. Sacco v. Kenton*, 386 F.2d 143, 145 (2d Cir. 1967).

3. Surveillance revealed that appellant was seen with the following persons with arrest records, of whom all but those with asterisks by their names also have conviction records:

T. Spero
P. T. Dioguardi *
T. Persico
M. A. Bolino
P. Rossillo
A. Inciarrano *
C. S. Vitale *
C. Panarella
A. Giannattasio
A. Russo
J. Brancato
T. DiBelle
Carmine Franzese
T. Scuderi *
A. Abbatemarco
J. Langella
H. McIntosh

vague, in that nothing fairly indicates that it applies to persons who have been previously convicted of crimes, and defectively overbroad, in that it encroaches upon appellant's freedom of association to an extent not warranted by any of the purposes of probation.

From the beginning of the modern probation era, the statute under which the district court here imposed the condition, 18 U.S.C. § 3651,[4] has been construed in the light of what the Supreme Court once indicated is the underlying purpose of probation:

> The great desideratum [is] the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment.

*United States v. Murray*, 275 U.S. 347, 357, 48 S.Ct. 146, 149, 72 L.Ed. 309 (1928). Because permitting a probationer "association with hardened or veteran criminals" would defeat probation's underlying purpose, it has for many years been one of the standard conditions of probation that such association is prohibited. We have upheld against a claim of unconstitutional vagueness a condition forbidding association with persons having criminal records.[5] *Birzon v. King,* 469 F.2d 1241, 1242–43 (2d Cir. 1972).

The court below believed that such "criminal record" conditions were simply an "inverse form" of the "law-abiding" condition at issue here. The words on their face, however, appear to involve quite different, albeit frequently overlapping, categories of persons. A person disobeying the law today and hence not being law-abiding may as yet have no criminal record, and a person with a past record may be entirely law-abiding today. Thus it would be preferable if conditions phrased in terms of "law-abiding persons" were avoided when it is intended to proscribe association with persons having criminal records.

While the differences between the "criminal records" condition upheld in *Birzon* and that at issue here might make the latter more susceptible to attack in some other case, it does not affect the result in this one. Appellant continually and consistently, over a period of years, associated on a more than casual basis with a large number of convicted criminals many of whom had been convicted of several crimes. The district court found that these associations represented a "calculated choice" on the part of appellant,[6] a man with ready access

---

**4.** 18 U.S.C. § 3651 states in pertinent part:

> Upon entering a judgment of conviction . . . ., any court having jurisdiction . . . may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.
>
> .    .    .    .    .
>
> The court may revoke or modify any condition of probation, or may change the period of probation.
> The period of probation, together with any extension thereof, shall not exceed five years.
> While on probation and among the conditions thereof, the defendant—
> May be required to pay a fine in one or several sums; and
> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and
> May be required to provide for the support of any persons, for whose support he is legally responsible.

This statute derives from the Act of March 4, 1925, ch. 521 § 1, 43 Stat. 1259, which in turn was enacted in response to *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) (no inherent judicial power in federal courts to suspend sentence). *See United States v. Murray,* 275 U.S. 347, 352–57, 48 S.Ct. 146, 72 L.Ed. 309 (1928). *See generally* Evjen, *The Federal Probation System: The Struggle to Achieve It and Its First 25 Years,* Federal Probation, June 1975, at 3.

**5.** The term "association" has been defined in the probation or parole context to mean something more than "merely a fleeting or casual acquaintance." *Birzon v. King,* 469 F.2d 1241, 1243 (2d Cir. 1972). *See also Arciniega v. Freeman,* 404 U.S. 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971) ("association" in parole condition did not extend to "incidental contacts" on a legitimate job for a common employer). "Criminal record" has been said to "refer to conviction for crime." *Birzon v. King, supra,* 469 F.2d at 1243.

**6.** In response to appellant's rhetorical questions, "Who is going to associate with me? The F.B.I.? Attorneys?," the court below said:

to counsel as well as to probation officials, from any of whom he could have sought clarification if he had had any doubt as to the meaning of the now-challenged condition. No person "of common intelligence" in appellant's position, if he gave the words of the condition the interpretation consistent with their "common usage and understanding," *Birzon v. King, supra,* 469 F.2d at 1243, *quoting Sproles v. Binford,* 286 U.S. 374, 393, 52 S.Ct. 581, 76 L.Ed. 1167 (1932), *and Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926), could reasonably have believed that his pattern of association was allowed by the "law-abiding persons" condition. Thus appellant's vagueness argument must be rejected, for "[o]ne to whose conduct a statute [or probation condition] clearly applies may not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). As the Supreme Court observed in *Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973):

> [E]ven if the outermost boundaries of [the condition] may be imprecise, any such uncertainty has little relevance here, where appellant['s] conduct falls squarely within the "hard core" of the [condition's] proscriptions . . ..

Appellant's overbreadth argument must be rejected for similar reasons. He concedes that a probationer's freedom of association may be restricted in pursuit of legitimate probation objectives, *see Malone v. United States,* 502 F.2d 554, 556–57 (9th Cir. 1974) (upholding restrictions on associations with Irish groups, on ground that "[t]here is [a] reasonable nexus between the probation conditions and the goals of probation"), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975), and it is clear that a condition restricting association with persons with criminal records does not violate the First Amendment, *Birzon v. King,*

*supra,* 469 F.2d at 1243 (terming such an argument "frivolous"). Thus appellant's conduct was unprotected, *see Parker v. Levy, supra,* 417 U.S. at 761, 94 S.Ct. 2547, and we are not required to evaluate whether the condition might legitimately be applied to other, hypothetical fact situations. While the Supreme Court has occasionally engaged in such "facial" analysis of statutes, *see Broadrick v. Oklahoma, supra,* 413 U.S. at 611–15, 93 S.Ct. 2908; Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844 (1970), it has generally done so only "because of a judicial prediction or assumption that the statute's very existence may cause *others not before the court* to refrain from constitutionally protected speech or expression," *Broadrick v. Oklahoma, supra,* 413 U.S. at 612, 93 S.Ct. 2908, 2916 (emphasis added), *but see* note, *supra,* 83 Harv.L.Rev. at 848 ("a claim of overbreadth is not ineluctably vicarious"). Since, unlike a statute, the probation condition at issue here can affect only appellant, and since his conduct could be legitimately proscribed, it would be inappropriate for us to consider whether the condition might be overbroad on its face.

### Legality of Sentence

Appellant argues that Judge Rosling's 1964 sentence of concurrent terms of six years has been exceeded by Judge Dooling's 1969 sentence of ten years, with credit for time served, and that this makes the later sentence illegal under our decision in *United States v. Coke,* 404 F.2d 836 (2d Cir. 1968) (en banc). Relying on the court's supervisory powers, *Coke* held that a defendant reconvicted following appellate reversal of his first conviction could not be given a greater sentence than he received on his first conviction, absent some significant change in the circumstances. *Id.* at 845–46.[7] We disagree with all but a minor

---

The people you went to grade school with, people you went to school with, only a small percentage of these people have arrest records. So, it is not all together [*sic*] true that you are condemned by your neighborhood. You associate with those people you choose.

7. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 2089, 23 L.Ed.2d 656 (1969), which established a similar guideline as a constitutional rule, was not filed until June 23, 1969, 17 days after Judge Dooling's June 6, 1969, sentence of appellant. Under *Michigan v. Payne,*

part of appellant's factual premise that he received a greater sentence from Judge Dooling, and accordingly, with one modification, uphold Judge Dooling's sentence.

■ The problem in this case arises from the passage in 1966—after Judge Rosling's 1964 sentence and before Judge Dooling's 1969 sentence—of a statute requiring credit for time spent in custody prior to sentencing. 18 U.S.C. § 3568; see note 2 supra. Appellant spent 1,168 days in custody before Judge Rosling sentenced him, and the judge stated that he had considered that fact in imposing a six-year sentence; as noted, however, he did not allow day for day credit against the sentence imposed. As Judge Dooling later found, a judge in 1964 had no power to require the Attorney General to give credit for time served; the only way that the judge could give such credit himself was by imposing a lesser sentence than he would otherwise have imposed. Thus, under the six-year sentence of Judge Rosling, appellant would—by the Government's calculation—have been entitled only to credit for "good time," amounting to some 19 months, and he would have had to have served 53 months (six years or 72 months less 19 months) in prison. By contrast, under Judge Dooling's ten-year sentence, the Government says, appellant is entitled to credit for time served, 1,168 days, as well as for good time, 1,200 days, for a total of approximately 79 months' credit. When deducted from the ten-year or 120-month sentence, this leaves appellant with about 41 months to serve, a figure substantially less than the 53 months he would have served under Judge Rosling's sentence.

Appellant's only serious challenge to these figures relates to whether he would have received credit under the six-year sentence that resulted from his second conviction (following appellate reversal of the first), see note 1 supra, for time served on or after his fist conviction. He concedes that there would have been no credit for the period between March 7, 1960, when he was first imprisoned on these federal charges, and October 27, 1961, when he was sentenced on the first conviction, but he argues that he would have been credited for the period between October 27, 1961, and his release on bail on May 20, 1963, a period of some 19 months. Such a credit would have reduced the time served under Judge Rosling's six-year sentence from the 53 months mentioned above to 34 months, making Judge Dooling's later sentence of 41 months more severe in terms of time served.

While it is far from clear that appellant would have received credit for time served on his first conviction,[8] we need not resolve this question. Even assuming such credit would have been available, appellant's calculations are in error to the extent that they take into account time served after this court reversed appellant's first conviction on July 13, 1962. *United States v. Persico,* 305 F.2d 534 (2d Cir. 1962). From that point—or perhaps a point a few weeks later when the mandate became final—appellant was no longer serving time pursuant to the first conviction, but rather had returned to the status of a prisoner awaiting trial, a status in which, as appellant concedes, no credit would have accrued under Judge Rosling's 1964 sentence. Hence the most that would have been deducted from the six-year sentence, other than credit for good time, would have been some nine months (late October, 1961, to late July, 1962). This deduction would have left appellant with about 44 months to serve (53

---

412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973), *North Carolina v. Pearce* is not retroactive, and hence *Coke* controls the instant case.

8. Under the pre-1966 version of Fed.R.Crim.P. 38(a)(2), an incarcerated defendant had the option of not commencing service of sentence pending appeal. Many defendants elected this option, in some cases because they wished to avoid transfer to penitentiaries far from their homes. *See, e. g. Bandy v. United States,* 396 F.2d 929, 930 (8th Cir.) (per curiam), *cert. denied,* 393 U.S. 1004, 89 S.Ct. 494, 21 L.Ed.2d 469 (1968); *United States v. Lawrenson,* 383 F.2d 77, 79–80 (4th Cir. 1967) (per curiam). There is no information in the record here as to whether appellant made such an election in 1961.

months less 9 months) on Judge Rosling's sentence, whereas he will serve just 41 months on Judge Dooling's sentence. Thus the latter sentence is not more severe than the former in terms of the period appellant will be incarcerated.

■ There is one aspect of Judge Dooling's sentence, however, that the judge below suggested and the Government here concedes has more severe consequences for appellant than he would have faced under Judge Rosling's sentence. Judge Dooling wrote that his ten-year sentence "was, if in any respect a longer sentence, longer only—perhaps—in the duration of post-release parole supervision." The Government has, by letter to this court, made it clear that appellant would indeed face a longer post-release parole period under Judge Dooling's sentence. Requiring a person to stay on parole imposes a serious deprivation of liberty upon him, see *Jones v. Cunningham*, 371 U.S. 236, 242–43, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), as we have implicitly recognized by holding a parolee to be "in custody" for habeas corpus purposes, *Argro v. United States*, 505 F.2d 1374, 1375 n. 1 (2d Cir. 1974); *Wapnick v. United States*, 406 F.2d 741, 742 (2d Cir. 1969) (per curiam). While it is true that the longer parole period here is to some degree offset by the shorter period appellant will be incarcerated, "such a trade-off between kinds and types of punishment" may not be the basis for a sentence imposed upon reconviction following a successful appeal, *United States v. Barash*, 428 F.2d 328, 332 (2d Cir. 1970), *cert. denied*, 401 U.S. 938, 91 S.Ct. 928, 28 L.Ed.2d 217 (1971). In order to effectuate the intent of *United States v. Coke, supra*, we modify Judge Dooling's sentence to the limited extent of requiring that appellant spend no more time under post-release parole supervision than he would have spent under Judge Rosling's 1964 sentence.

### Cruel and Unusual Punishment

■ Appellant's final argument is that, because the crime as a result of which he has now been ordered to prison occurred over 17 years ago, it is cruel and unusual punishment to send him to prison at this time. This argument, not raised below, can be easily rejected. The time delays in appellant's case were the result of mistrials, appeals, and retrials following appellate reversal. *See* note 1 *supra*. Appellant actively sought appellate review, and there is no indication that he did not acquiesce in the declarations of mistrial. Moreover, this court in 1970 rejected speedy trial and cruel and unusual punishment contentions made by appellant on the basis of his numerous trials, the court noting that he had not, to that point, sought to speed up the progress of his case. *United States v. Persico*, 425 F.2d 1375, 1385 (2d Cir.), *cert. denied*, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970). The fact that appellant has not gone to prison since 1970 resulted in part from further legal actions on his part and in part from the suspension of his sentence while he was on his now revoked probation. When a defendant's own actions or actions in which he has acquiesced have caused the delay between the commission of the crime and the entering of prison, he ordinarily will not be heard to contend that the delay constitutes cruel and unusual punishment. *See Scott v. United States*, 434 F.2d 11, 23 (5th Cir. 1970) (per curiam adoption of district court opinion).

Revocation order affirmed. Order denying motion under Fed.R.Crim.P. 35 modified and, as modified, affirmed.