# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 11, 2007

Charles R. Fulbruge III
Clerk

No. 07-50098

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

DONALD LEE LOVELACE

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Texas
No. 4:01-cr-2220-ALL

Before DAVIS, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Donald Lee Lovelace appeals the revocation of his supervised release, arguing (1) that the condition he allegedly violated, which forbade him from associating with other felons, was impermissibly vague and (2) that he did not have actual notice that writing letters to a convicted felon constituted associating with a felon. We affirm the district court's revocation.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Donald Lee Lovelace pleaded guilty to knowing possession of child pornography in violation of 18 U.S.C. § 2252A(5)(B). Lovelace was sentenced to sixty months' imprisonment followed by three years' supervised release. Lovelace's supervised release included the following standard condition:[1] "The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the Probation Officer." Lovelace's term of supervised release began November 10, 2005.

On December 6, 2006, Lovelace's probation officer notified the district court that Lovelace had violated the terms of his supervised release when he wrote at least two letters to Kevin Pacheco, an inmate at the Federal Correctional Institute in Fort Worth, Texas and Lovelace's former cellmate. In these letters, Lovelace discussed participating in sexual acts with minor males and included a photograph of an underage boy. Lovelace was subsequently arrested, and the Government filed a motion seeking the permanent revocation of Lovelace's supervised release. Lovelace moved to dismiss the Government's motion.

At a hearing Lovelace conceded that he had written the letters without his probation officer's permission, but he argued the court failed to inform him that writting letters constituted "association" as the conditions of his supervised release prohibited. Without "fair notice" of the range of prohibited conduct, Lovelace argued a revocation constituted a violation of his due process rights.

The district court disagreed and held that the term "associate" is "a term of common knowledge . . . [and] that it means not only to have personal association but also to associate by mails, by email, by telephone." The court

---

[1] UNITED STATES SENTENCING GUIDELINES (U.S.S.G.) § 5D1.3(c)(9).

found that Lovelace had violated the conditions of his supervised release when he wrote Pacheco. The court revoked Lovelace's supervised release and sentenced him to four months' imprisonment followed by thirty-two months' supervised release. Lovelace timely filed his notice of appeal.

II

On appeal, Lovelace raises two issues. First, he argues that the condition prohibiting associating with convicted felons is impermissibly vague. Second, he contends the district court abused its discretion when it revoked his supervised release, because the Government failed to prove Lovelace had actual notice that writing a convicted felon violated the supervision conditions.

A

Lovelace argues that the written terms of supervised release failed to provide him with "fair notice" of proscribed conduct, and thus violated his due process rights. Specifically, Lovelace contends the condition prohibiting association with a felon does not define "associate" or specify what conduct constitutes association. Therefore, he argues, the term is impermissibly vague and a violation of due process.

A district court has discretion crafting the terms and conditions of supervised release.[2] Ordinarily, this Court reviews those conditions for abuse of discretion.[3] In this case, the record does not indicate, nor does Lovelace contend, that he objected to this condition at or after his sentencing. When a defendant argues that a condition of supervised release is impermissibly vague but has failed to object at or after the sentencing hearing, this court reviews for

---

[2] United States v. Paul, 274 F.3d 155, 164 (5th Cir. 2001).

[3] Id. at 165.

plain error.[4]  Reviewing case law from both this and other circuits, Lovelace's argument would fail even under a less deferential standard.

"Restrictions on an offender's ability to interact with particular groups of people . . . must provide 'fair notice' of the prohibited conduct."[5]  But conditions may provide such notice "even if they are not precise to the point of pedantry."[6]  Thus, sentencing courts may use "categorical terms" to prohibit specific instances of conduct[7] and these terms should be read in "a commonsense way" to satisfy due process.[8]  To determine vagueness, this Court may examine whether a reasonable person could predict prohibited conduct.[9]

This Court has not interpreted whether the term "associate" provides fair notice regarding prohibited conduct, but other circuits have held as a general matter that the term "associate," as used in conditions of supervised release or parole, is not impermissibly vague.  In United States v. Soltero,[10] the Ninth Circuit rejected Soltero's challenge to a condition of his supervised release prohibiting "associat[ion] with any known member of any criminal street gang."[11]  Specifically, Soltero argued the term "associate" was impermissibly vague and that it could cover incidental contact.  The Ninth Circuit disagreed.  Noting the

---

[4] United States v. Phipps, 319 F.3d 177, 192 (5th Cir. 2003).

[5] Paul, 274 F.3d at 166 (citing United States v. Loy, 237 F.3d 251, 262 (3d Cir. 2001)).

[6] Id at 167.

[7] Id.

[8] Id. at 166-67.

[9] See Paul, 274 F.3d at 166 (noting that the potential vagueness of a condition prohibiting a convicted person from visiting places frequented by minors can be determined by examining whether a reasonable person could predict which specific locations the defendant could visit).

[10] 2007 WL 3037348 (October 19, 2007).

[11] Id. at *5 (internal quotation marks omitted).

Supreme Court has excluded "incidental contact" from the term "association,"[12] the Soltero court held "with this limitation, men of common intelligence need not guess at the meaning of association"[13]—suggesting that non-incidental, i.e. purposeful, contact constitutes association.

Similarly, the Second Circuit has held that the term "associate" is not impermissibly vague in the context of a parole condition forbidding a parolee from "associat[ing] with persons who have a criminal record."[14] That court noted that while "associate" does not include incidental encounters or contact, it does mean "[t]o join[,] often[] in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally."[15]

Since the Supreme Court ruled that incidental contact between ex-convicts working for a common employer does not run afoul of conditions restricting association,[16] other courts have emphasized the distinction between accidental or unavoidable contact and purposeful or deliberate contact.[17] While these cases do not specifically hold that written communication constitutes association, they clearly indicate that "associate" encompasses types of contact less formal than

---

[12] Arciniega v. Freeman, 404 U.S. 4, 4 (1971).

[13] Soltero, 2007 WL 3037348 at *5 (internal quotation marks omitted).

[14] Birzon v. King, 469 F.2d 1241, 1242-43 (2d Cir. 1972). See also United States v. Shiff, 876 F.2d 272, 276 (2d Cir. 1989) (holding as permissible a condition prohibiting tax evader from associating with groups that advocate non-compliance with U.S. tax laws).

[15] Birzon, 469 F.2d at 1243 n. 3 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY).

[16] Arciniega, 404 U.S. at 4.

[17] See, e.g., United States v. Ferruccio, Nos. 95-4281, 96-3612, 1997 WL 137374, at *2 (6th Cir. Mar. 25, 1997) (holding that defendant's meetings with convicted felons were "more than 'incidental contacts'"); United States v. Albanese, 554 F.2d 543, 546 n. 5 (2d Cir. 1977) (noting that "association" requires more than "merely a fleeting or casual acquaintance"). Cf. United States v. Loy, 237 F.3d 251, 269 (3d Cir. 2001) (noting that while associational conditions do not extend to casual or chance meetings, defendants' deliberately seeking contact with minors would run afoul of condition prohibiting defendant from contact with minors).

face-to-face meetings with explicit agreement to join together in common purpose. We agree with these cases, and we hold that the term "associate" as used in the supervision condition at issue is not impermissibly vague.

This conclusion is bolstered by analogous cases within this Circuit. In United States v. Garcia-Mejia,[18] the defendant challenged as impermissibly vague a supervised release condition prohibiting him from possessing "dangerous weapons."[19] He argued the condition failed to provide "fair notice," because he was unable to ascertain with reasonable certainty the type of conduct the condition proscribed.[20] This Court held that the term was not impermissibly vague and said that Garcia-Mejia "[would] violate his supervised release only by possessing a 'dangerous weapon' in a context in which, by the dictates of common sense, that 'dangerous weapon' has no legitimate, everyday use."[21] For example, the court noted Garcia-Mejia would not violate the condition by using a steak-knife at a restaurant but would violate the condition if he carried the steak-knife as protection.

Similarly, in Phipps, the defendants challenged as impermissibly vague a condition of supervised release that prohibited them from possessing "sexually oriented or sexually stimulating materials" or "patroniz[ing] any place where such material or entertainment is available."[22] The defendants argued that the condition could prohibit possession of newspapers that contained lingerie advertisements or "even . . . the 'Song of Solomon.'"[23] This Court held that,

---

[18] 394 F.3d 396 (5th Cir. 2004) (judgment vacated on other grounds).

[19] Id. at 397-98.

[20] Id. at 398.

[21] Id.

[22] Phipps, 319 F.3d at 192-93.

[23] Id.

under the commonsense approach required by Paul, the condition was not impermissibly vague and prohibited the possession of sexually explicit materials of the type found at adult bookstores or adult theaters, not publications or materials with incidental sexual content.

As to Lovelace's specific argument that it is unclear whether written correspondence constitutes association, the condition at issue, and others like it, are imposed to protect the public, encourage defendant rehabilitation, and deter future criminal acts.[24] In addition to the condition prohibiting association, Lovelace was prohibited from having contact with children, accessing the Internet, or possessing photographic equipment and was required to participate in mental health and sex offender treatment programs and to comply with the Texas Sexual Offender Registration Program. In light of those requirements and the statutory purpose of the supervision conditions, we are skeptical of his argument that a commonsense interpretation of the term "associate" in this context might exclude recurrent written communication between felons—particularly written communication regarding the sexual exploitation of children.

Using the common-sense approach dictated by Paul, we hold the term "associate" provided Lovelace with fair notice at sentencing regarding prohibited conduct. At a minimum, the condition at issue would prohibit intentionally writing multiple letters to a known felon. The condition is not impermissibly vague.

B

Lovelace next contends that the district court abused its discretion by revoking his supervised release. He argues that the Government failed to prove that he had actual notice that writing his former cellmate, a convicted felon,

---

[24] See 18 U.S.C. §§ 3583(d)(1) & 3553(a)(1)-(2).

violated the terms of supervision. A district court may revoke a term of supervised release after finding by a preponderance of the evidence that the defendant violated a condition of that release.[25] This Court reviews the district court's decision for abuse of discretion.[26]

In order to ensure "actual notice," a district court shall direct a probation officer to provide the defendant with written notice setting forth the conditions of supervised release[27] and to instruct the defendant as to those conditions.[28] Generally, in reviewing actual notice claims, this court first examines whether the defendant received from the probation officer written notice of the supervised release terms. Nonetheless, failure to provide such notice does not automatically invalidate revocation if the defendant had actual notice of the conditions.[29]

Lovelace does not contend, nor does the record indicate, that the Government failed to meet the statutory notice requirements. Moreover, at Lovelace's original sentencing in 2001, the district court informed him that he needed to comply with both the standard and special terms of supervised release, which the written judgment enumerated. Lovelace, thus, had actual notice of the supervised release terms. Given our analysis discussed above,[30] we reject Lovelace's further argument that he lacked actual notice that written communication constituted association.

---

[25] 18 U.S.C. § 3583(e)(3).

[26] United States v. Grandlund, 71 F.3d 507, 509 (5th Cir. 1995).

[27] 18 U.S.C. § 3583(f).

[28] 18 U.S.C. § 3603(1).

[29] United States v. Arbizu, 431 F.3d 470, 471 (5th Cir. 2005).

[30] See supra Part II.A.

III

This Court concludes that the standard supervised release condition at issue, and specifically the term "associate," is not impermissibly vague and that Lovelace had actual notice that the condition prohibited him from intentionally writing letters to a convicted felon. We therefore AFFIRM the district court's revocation of Lovelace's supervised release.