**UNITED STATES of America,**

**v.**

**Vincent P. McCRUDDEN, Defendant.**

**No. 11–CR–61 DRH.**

United States District Court, E.D. New York.

Signed July 29, 2015.

---

Loretta E. Lynch, United States Attorney, Central Islip, NY, By: Christopher Caffarone, A.U.S.A., for the Government.

Abigail C. Field, Esq., Cutchogue, NY, for Defendant.

## MEMORANDUM AND ORDER

HURLEY, Senior District Judge.

On April 10, 2015, a hearing was held before me concerning two violations of supervised release alleged by the Probation Department to have been committed by Vincent McCrudden ("McCrudden" or "defendant"). Following the taking of testimony and oral argument, a briefing schedule was established. Pursuant to that schedule, the Court is now in receipt of

Defense Counsel Abigail C. Field's original and reply letter briefs of April 16, 2015 and May 14, 2015 respectively, as well as Assistant United States Attorney Christopher Caffarone's post-hearing submission in opposition dated May 7, 2015.

The purpose of this decision is to address and resolve those open violations, viz. Charges 4 and 5 as set forth in the "amendments to the Violation[s of] Supervised Release Report" ("AVOSR") filed on January 14, 2015.[1]

## CHARGE 4

Charge 4 reads:

Between June 2, 2013 and September 24, 2014, the offender violated the following standard condition of supervision: "[the offender] shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer." (Jan. 14, 2015 AVOSR at 2.)

As noted by Defense Counsel Field, the resolution of charge 4 turns solely on one issue, namely whether "Mr. McCrudden's [acknowledged] contact with felons constitute[s] an 'association.'"[2] (*See* Field's Apr. 16, 2015 Letter at 1.) In urging that a negative answer to that question is called for, defendant relies primarily upon dictionary definitions of "associate" consistent with guidance found in *Birzon v. King*, 469 F.2d 1241 (2d Cir.1972), together with the instruction furnished in *United States v. International Brotherhood of Teamsters*, 998 F.2d 120, 125 (2d Cir.1993) that a "determination of knowing association

should be inferred from the duration and quality of the association." *Id.* (internal quotation marks and citations omitted).

It is undisputed that McCrudden had contact with a number of known felons during his period of supervised release via, inter alia, letters to several and telephone calls. (Gov't's May 7, 2015 Letter at 2; *see also* Def.'s May 14, 2015 Reply at 4–5.) None of those contacts, defendant urges, violated the subject condition of his supervised release because (1) none of the subject contacts was face-to-face, and (2) the contacts were not of sufficient duration and quality to constitute proscribed associations. Each of these arguments will be addressed in turn.

### a) *Purported Need for Face–to–Face Contact Between McCrudden and a Known Felon*

█ The Second Circuit in *Birzon v. King* explained that "associate" is a word of "common usage and understanding" known to persons of "ordinary intelligence," 469 F.2d at 1243, quoting the "general definition" of the term found in *Webster's Third New International Dictionary*, to wit: "[t]o join often, in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally." *Id.* at 1243, n. 3. Against that backdrop, defendant argues:

Because the touchstone of the constitutionality analysis was the ordinariness of the term associate, and its "adequate interpretation in common usage and understanding," dictionary definitions, rather than case law, [are] the best place to start the analysis. Merriam Webster

---

1. As explained in this Court's March 16, 2015 Memorandum and Order (Docket # 146), Charges 1 and 2 were dismissed and Charge 3 was withdrawn.

2. Not surprisingly, no claim is made that the term "associate" is unconstitutionally vague

given that the Second Circuit explicitly found to the contrary in rejecting a challenge to a like "no association" provision in a parole context. *Birzon v. King*, 469 F.2d 1241, 1242 (2d Cir.1972).

offers. in relevant part: "to join as a partner, friend, or companion" and "to come or be together as partners, friends, or companions." While the communications at issue were certainly friendly, Mr. McCrudden did not "join", "come or be together" with anyone; all of his communications were at distance. The American Heritage Dictionary says in relevant part: "To spend time socially; keep company: associates with her co-workers on weekends." Again, Mr. McCrudden did not keep company with anyone he was communicating with; they were incarcerated, he was not, nor is there any allegation that he visited them.

(Def.'s Apr. 16, 2015 Letter Br. at 8 (dictionary cites deleted)).

In essence, defendant posits that absent evidence that he and a known felon were "physically . . . together" at some point, no association occurred as a matter of linguistics and law. *Id.* That proposition is not persuasive. If correct, it would mean, by way of an example, that if a known felon and an offender subject to a "no association" provision planned a terrorist attack via weekly telephone conversations and e-mails, but never met in person, the offender would have a viable defense to a violation of supervised release charge. Not only would such a result defy common sense, but is also out-of-sync with a series of well reasoned, albeit out-of-Second Circuit decisions rejecting the notion that face-to-face contact is a prerequisite to a finding that two individuals associated with one another. *See United States v. Everhart,* 562 Fed.Appx. 937, 939–40 (11th Cir. 2014) (unpublished opinion)(letters with convicted felon constituted association); *United States v. Charles,* 531 F.3d 637, 639 (8th Cir.2008) (association evidenced by possession of two letters from federal inmates)); *United States v. Lovelace,* 257 Fed.Appx. 773, 775–76 (5th Cir.2007) (un-

published decision)) and *United States v. Bunch,* 2012 WL 1711345, at *1–2, 2012 U.S. Dist. LEXIS 67520, at *1–3 (E.D.Ky. Jan. 30, 2012) (two phone calls and receiving a letter from a convicted felon constituted association)).

Simply put, association with another individual typically, but not necessarily includes face-to-face interaction. Tellingly, McCrudden's counsel, notwithstanding the first-rate caliber of her submissions, was unable to cite a single decision espousing a contrary view.

b) *Duration and Quality of the Contacts Between McCrudden and a Known Felon*

■ As earlier noted, McCrudden acknowledges that he was in contact with known felons. The gravamen of this part of defendant's argument is that those contacts were insufficient in duration and quality to constitute a breach of his obligation not to associate with such an individual or individuals. In doing so, he quotes language from *United States v. International Brotherhood of Teamsters,* 998 F.2d 120, 125 (2d Cir.1993) indicating that a "determination of knowing association should be inferred from the duration and quality of the association." (Def.'s Apr. 16, 2015 Letter Br. at 7 (internal quotation marks and underlining deleted).) However, the issue in *International Brotherhood of Teamsters* did not entail the meaning of a non-association condition of supervised release but the more multi-layered question of whether a former union official violated a particular provision of a consent decree intended to prevent members of organized crime from improperly influencing union activities. Accordingly, the weight to be afforded to the duration and quality considerations for present purposes may be debatable. (*But see United States v. Tarricone,* 1996 WL 617330 at *3

(S.D.N.Y. Oct. 25, 1996) and cases cited therein to the effect that the general meaning of "knowingly associating" is essentially the same whether the language appears in a consent decree or an order governing parole or supervised release.) However, to the extent they are equally significant here, McCrudden's relationship with Jared Reed was of adequate duration and quality to run afoul of the non-association provision of his supervised release. As correctly synopsized by the government, the hearing evidence demonstrated that

> [i]n addition to writing two letters to Reed (GX 107–108), the defendant also spoke to Reed twice on the telephone. *See* GX 107 ("It was good to hear your voice the other day .... like I said to you over the phone"); GX 108 ("It was great to speak with you"). The defendant's association with Reed did not stop there. The defendant further communicated with representatives of Reed and assisted Reed and his representatives in filing a motion. *See* GX 109.

(Gov't's May 7, 2015 Letter Br. at 3.)

While the reference in the last sentence of the above quoted excerpt from the government's May 7th letter about McCrudden assisting Reed's representatives in filing a motion does not—as defendant underscores—evidence direct contact between McCrudden and Reed, (Def.'s Reply at 9–10), that information suggests that the relationship between the two men was something more than a non-actionable "fleeting or casual acquaintance," *United States v. International Brotherhood of Teamsters,* 19 F.3d 816, 822 (2d Cir.1994) (citations and internal quotation marks deleted) or a non-prohibited "incidental contact[ ]," *Arciniega v. Freeman,* 404 U.S. 4, 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971). Instead, their direct inter se communications extended at least

from mid-May of 2014, GX 107, to mid-August of that year, GX 108, and given the totality of the circumstances, are best described as that of "'friend[s] ... or all[ies]'" functioning "'in a loose relationship'" one to the other. *Birzon v. King,* 469 F.2d at 1243, n. 3 quoting the *Webster's Third New International Dictionary* definition of the term "associate." Indeed, defendant refers to Reed as his "friend" in one of his correspondences. GX 107 at 2.

In sum, McCrudden's contacts with Reed were of sufficient quality and duration to be legitimately labeled as a prohibited association. I find the government has met its burden of proof as to Charge 4.

### CHARGE FIVE

Charge 5 reads:

> Between July 7, 2013 and October 1, 2014, the offender violated the following mandatory condition of supervision: "[the offender] shall not commit another federal, state or local crime." Specifically, the offender committed an offense, including but not limited to making materially false, factitious or fraudulent statements or fraudulent statements or representations to a United States Probation Officer, in violation of Federal Law.

(AVOSR at 4.)

█ The federal law claimed to be violated is 18 U.S.C. § 1001, with the basis for the charge being that the defendant falsely answered "NO" in his June 2013, August 2014 and September 2014 monthly Supervision Reports to the inquiry whether he "[h]ad contact with people with a criminal record." *Id.* at 4–5.

█ Here again, like with Charge 4, the focus of dispute is narrow. As explained by defense counsel, the "only question[ ]" is whether the "false statements" made by

McCrudden to Probation were " 'material.' " (Def.'s Apr. 16, 2015 Letter at 1.) " 'Under § 1001, a statement is material if it has a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter.' " *Id.* at 4, *quoting United States v. Coplan*, 703 F.3d 46, 79 (2d Cir.N.Y.2012) (internal quotation marks and citation deleted).

Defendant contends that the government's proof falls short of the mark as to materiality because

> [i]n neither the New Violation Memo nor during Probation Officer Gregory Carter's testimony at the April 10th hearing did the Government identify the relevant decision the communications could be material to, or show how the innocuous communications at issue could have influenced ... that decision. In fact, during cross examination Mr. Carter was unable to identify any decision the charged communications might have been relevant to, much less assert how the communications could have affected it.

(Def.'s Apr. 15, 2015 Letter at 4–5.)

Granted, the record is devoid of evidence that had McCrudden truthfully answered the contact inquiries in government's exhibits 112, 114, and 115—as he did in completing government's exhibit 113 pertaining to Brown—that Probation Officer Carter would have sought such formidable sanctions as a court order modifying or revoking his supervised release. However, that does not mean that defendant's lies lacked materiality. To the contrary, the offender's conduct deprived the officer of his ability to make the timely decisions necessary for the performance of his monitoring function. Such decisions are often more nuanced, i.e. less extreme than those

embodied in defendant's argument. Consider Officer Carter's response when informed by McCrudden that he had been contacted by Brown; after accepting assurances along the lines that further outreach efforts by Brown would be spurned, Carter made the decision to simply "instruct[ ] him to inform me of any other contact he may have with Mr. Brown or any other individuals." (Apr. 10, 2015 Hr'g Transcript ("Tr.") at 9).

The proposition that "during cross-examination Mr. Carter was unable to identify any decision the charged communications might have been relevant to," (Def.'s Apr. 16, 2015 Letter at 5), is out-of-sync with the record as evidence by the following exchange:

> Q. If you had known about any of these communications [viz., the ones not disclosed in government's exhibit's 112, 114 and 115], ... is there anything about the nature of these communications that might have driven you to change the terms or conditions of his supervised release?
>
> A. To change the terms? No, but it would be reinforced and it would be discussed.
>
> . . . .
>
> Q. ... Is there anything in these letters that would concern you such that you would change the terms and conditions of his probation or otherwise violate him, or would it be more of a situation where you said you would reinforce the terms and conditions and basically really warn him to stop it or something?
>
> A. I can't answer that. I don't know what I would have done if it was brought to my attention [as required by defendant, rather than] after the fact.
>
> Again, I would need to probably have a discussion with my supervisor to see

how we would proceed, but it would be of concern.

It would be concerning to me if it was brought to my attention after the fact knowing what—knowing that he did report one instance [i.e. the contact by Brown] and didn't report the other ones.

(Tr. at 22–24.)

To partially reiterate, the false information provided in government's exhibits 112, 114 and 115 prevented Carter from pursuing such option as developing a battle plan—either alone or after consultation with his supervisor—in response to McCrudden's blatant violations as they occurred.[3] That the content of the prohibited communications were innocuous is interesting but largely irrelevant. "[T]he defendant [has] mistakenly focuse[d] on the materiality of the content of his improper communications with felons, rather than, as the law demands, on the materiality of the misstatement," i.e. their capacity to influence the decision or decisions made by his probation officer in endeavoring to, inter alia, assure compliance with the terms of his sentence. (Gov't's May 7, 2015 Letter at 3.).

In sum, materiality under 18 U.S.C. § 1001 in the present context means that the information furnished by a person on supervised release—or, as in this case, not furnished—was capable of influencing the assigned probation officer in deciding what steps, if any, should be taken to help the offender appropriately re-enter society consistent with the sentence imposed by the Court. *See* Second Circuit's explanation of materiality provided in *Coplan, supra.* Judged against that standard, the government has established the disputed materiality component of Charge 5.

**3.** The withheld contact information was discovered upon the execution of a search war-

*CONCLUSION*

The government has proven both Charges 4 and 5 by a preponderance of the evidence.

The case will next appear on the Court's calendar on August 18, 2015 at 2:00 p.m. Counsels' sentencing memoranda shall be filed on or before August 12, 2015.

SO ORDERED.

rant at McCrudden's residence on or about November 17, 2014. (AVOSR at 2.)