**John B. LoFRANCO, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION; United States Probation Department for the Southern District of New York, Respondents.**

No. 95 CIV.9303 (JES)(AJP).

United States District Court,
S.D. New York.

Nov. 26, 1997.

Ronald L. Kuby, Kunstler & Kuby, New York City, for Petitioner.

Martin Siegel, Asst. U.S. Atty., New York City, for Respondents.

## ORDER

SPRIZZO, District Judge.

The above-captioned action having come before this Court, and Petitioner having filed a petition for a writ of habeas corpus challenging as overly broad, ambiguous and violative of his constitutional rights a special condition of parole barring him from associating with the Hell's Angels or any other "outlaw motorcycle gang," and Magistrate Judge Peck having issued a Report and Recommendation to the Court dated October 9, 1996, recommending that the action be remanded to the Parole Commission to address ambiguities regarding this special parole condition, and Petitioner having filed objections to the Report and Recommendation on December 16, 1996, and Respondents having filed a response to Petitioner's objections on

January 27, 1997, and the Court having considered all matters raised, it is

**ORDERED** that the aforementioned Report and Recommendation is hereby adopted, and it is further

**ORDERED** that, for the reasons set forth in the Report and Recommendation, the action is remanded to the United States Parole Commission for further consideration in accordance with the Report and Recommendation, and it is further

**ORDERED** that, in the event the special parole condition is not revised within ninety days to eliminate its vagueness, LoFranco's petition for a writ of habeas corpus shall be granted to the extent of deleting that part of the special parole condition concerning "outlaw motorcycle gangs."

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

This habeas corpus petition challenges a special condition of parole that prohibits petitioner John B. LoFranco from associating with the Hell's Angels or any other "outlaw motorcycle gang."[1] LoFranco, represented by Ronald Kuby of Kunstler & Kuby, seeks a writ of habeas corpus to eliminate the special parole condition. LoFranco argues that the special condition (1) unconstitutionally abridges his freedom of association in violation of the First Amendment of the Constitution and (2) is unconstitutionally vague. (Petition, 11/1/95, ¶ 19; LoFranco Br. at 20–24.)

For the reasons set forth below, I recommend that the special condition of LoFranco's parole be remanded to the Parole Commission for further consideration in accordance with this Report and Recommen-

dation. In the event that the special parole condition concerning "outlaw motorcycle gangs" is not revised within sixty days to eliminate its vagueness, I recommend that LoFranco's petition for a writ of habeas corpus be granted to the extent of deleting that part of the special parole condition.

## FACTS

### The Conspiracy Charges and LoFranco's Guilty Plea

On February 3, 1986, LoFranco pled guilty in the United States District Court for the Northern District of New York to three conspiracy counts, for racketeering, narcotics and extortion conspiracy. (*See* Petition ¶ 4; Certified Records [hereafter, "Cert. R."], Ex. 6, at cover page, 2, 8; LoFranco Br. at 3; Gov't Br. at 2.) Count 2 of the indictment charged that under 18 U.S.C. § 1962(d), LoFranco and at least eleven co-defendants

> conspired ... to participate in the affairs of an organization known as the Binghamton and Troy Chapters of the Hell's Angels Motorcycle Club ..., an enterprise engaged in activities which affected interstate commerce through a pattern of racketeering.

(Cert. R. Ex. 6: Presentence Report at 2.)[2] "LoFranco fully admitted to entering into three separate conspiracies with another individual charged under the same indictment." (LoFranco Br. at 3.) Both LoFranco and his co-conspirator were members of the Hell's Angels Motorcycle Club at the time of their arrest. (*Id.*)[3]

During his guilty plea allocution, LoFranco and his attorney specifically denied that LoFranco's conspiratorial actions were related

---

**1.** The parties' papers and the Parole Commission documents inconsistently spell Hell's Angels with and without the apostrophe. The Court will use "Hell's Angels" throughout this Report and Recommendation.

**2.** LoFranco also pled guilty to counts 3 and 5 of the indictment. Count 3, under 21 U.S.C. § 846, charged that LoFranco and *nineteen* co-defendants "conspired to distribute and possess with intent to distribute ... controlled substances including marijuana, hashish, LSD, cocaine and methamphetamine." Count 5, under 18 U.S.C. § 846, charged that LoFranco conspired "to use

an extortionate means ... to collect extensions of credit arising from the sale of controlled substances." (Cert. R. Ex. 6: Presentence Report at 2.)

**3.** Although the indictment alleged that LoFranco and his co-conspirator were members of the Mid–Hudson Hell's Angels chapter, the chapter that allegedly constituted the "conspiracy", LoFranco claims that he "was a member of the Hell's Angels Nomads. of New York, and was not affiliated at all with the Mid–Hudson [Hell's Angels] chapter." (LoFranco Br. at 4.)

to his membership in the Hell's Angels, and the judge who accepted LoFranco's guilty plea confirmed that the prosecution did not allege that the Hell's Angels were part of the conspiracy:

> THE COURT: Yes. All right, Mr. LoFranco, you heard what Mr. West [the Assistant U.S. Attorney] said with regard to what the Government's proof would be.
>
> Did you do substantially what he said you did with regard to these three counts?
>
> DEFENDANT LoFRANCO: Your Honor, I—
>
> MR. HARRIS [LoFranco's lawyer]: Your Honor, if I might briefly make a statement. Mr. LoFranco is here today and he is admitting that he did enter into these three separate conspiracies with James Harwood; and that as a part of those conspiracies, the necessary acts were committed. And he would further admit and state that he committed those acts as an individual alone. *They were not acts that were committed in any way, shape, or form as a part of a membership with the Hell's Angels Motorcycle Club of which he was also a member during this period, and the acts did not involve and were not a part of this membership;* but he would admit that he did enter into these conspiracies and committed the necessary overt acts as a part of those conspiracies.
>
> THE COURT: Yes. *So what you are saying [is that it] was not the Hell's Angels Club that was the conspiratorial group.*
>
> MR. HARRIS: *Exactly.*
>
> DEFENDANT LoFRANCO: *Yes, sir.*
>
> THE COURT: However, Mr. LoFranco does admit that he was a part of a conspiratorial group made up of individuals.
>
> DEFENDANT LoFRANCO: Yes, I do.
>
> THE COURT: All right. *[Assistant U.S. Attorney] West didn't state that the Hell's Angels were a part of the conspiracy.*
>
> MR. HARRIS: No, he didn't, your honor.
>
> THE COURT: Let me ask you, Mr. LoFranco, did you do substantially what Mr. West has said you did?

> DEFENDANT LoFRANCO: Substantially, yes, sir.

(LoFranco Br. Ex. A: 2/3/86 Plea Tr. at 24–25, emphasis added.)

LoFranco's association with the Hell's Angels is the focus of this habeas corpus petition.

### LoFranco's Sentencing

LoFranco was given a twenty-three year sentence. (Petition ¶ 7; Cert. R. Ex. 6: Presentence Report at cover page; LoFranco Br. at 4.) LoFranco served nine years in prison (he was released on parole on May 1, 1994). (Petition ¶¶ 8–9; LoFranco Br. at 4.)

### The Second Circuit Upheld the Parole Commission's Determination of LoFranco's Parole Release Date

In October 1987, almost seven years before LoFranco ultimately obtained parole, the Parole Commission held an initial hearing to determine when LoFranco should be considered for parole. The Parole Commission considered that LoFranco "was a high ranking member of the Hell's Angels Motorcycle Club in the Albany/Troy, New York area and with his codefendants, most of whom were members of the motorcycle club, were responsible for the distribution of massive amounts of illicit soft drugs . . . ." (O'Toole Dec. Ex. A at A–14.) In its November 12, 1987 Notice of Action relating to LoFranco's parole eligibility date, the Parole Commission concluded that:

> [LoFranco] had a leadership position in a criminally oriented organization responsible for distribution of massive amounts of illicit drugs over an eight year period; [LoFranco was] the single largest narcotics trafficker in the organization; [LoFranco] used extortion to collect drug debts; and [LoFranco] threatened a person's life.

(*Id.* at A–15.)

LoFranco petitioned for a writ of habeas corpus in the United States District Court for the Northern District of New York. LoFranco argued, *inter alia,* that the Parole Commission improperly considered his membership and leadership position in the Hell's Angels in setting his parole date. (*See id.* at A–24 to A–40.) The district court denied the

petition (*see id.* at A–56 to A–67, A–74 to A–75), stating that:

> In the present case, the [Parole Commission] relied upon both the Presentence Report and the sentencing memorandum. In both of these documents there is sufficient information to indicate that [LoFranco] was engaged in illegal activity from the date he became a member of the Hell's Angels [in 1977]. In addition, the indictment charging [LoFranco] with participation in the RICO conspiracy traces the origins of the conspiracy as far back as 1976. The reliance on these two documents by the [Parole Commission], as well as the indictment, in arriving at [LoFranco's] severity rating, was not an abuse of discretion.

(*Id.* at A–61.)

LoFranco's appeal to the Second Circuit argued, *inter alia,* that the Parole Commission violated his First Amendment right to freedom of association by allowing LoFranco's membership in the Hell's Angels, rather than the date of the first overt conspiratorial act, to determine his salient factor score. (*Id.* at 2.) [4]

The Second Circuit affirmed in an unpublished order, finding the Parole Commission's decision "was neither an abuse of discretion nor arbitrary or capricious." (O'Toole Dec. Ex. C at 3.) The Second Circuit further stated that

> [A]lthough membership in the Hell's Angels is, without more, not evidence of guilt at the trial level, a different standard applies when determining the appropriate sentence or parole.... [T]he Parole Commission was free to consider evidence of membership in an organization associated with drugs and violence and that advocates murder because these crimes are relevant to the issue involved.... Thus, the Parole Commission did not err in considering [LoFranco's] involvement as beginning upon his becoming a member of [the] Hell's Angels.

(*Id.* at 2–3.)

### The Parole Commission's Determination as to LoFranco's Special Parole Conditions

The Parole Commission set a number of special conditions for LoFranco's parole. (Cert. R. Ex. 1: Notice of Action, 10/29/91.) The Parole Commission imposed the "special" condition that LoFranco "not have any association with the Hell's Angels' Motorcycle Club or any of its members." (*Id.; see also* Petition ¶ 13.) In response to LoFranco's administrative appeal, the National Appeals Board affirmed the terms of his parole. (Cert. R. Ex. 2: Notice of Action on Appeal, 1/15/92.)

The Eastern Regional Parole Commissioner reviewed LoFranco's parole conditions *sua sponte* in an attempt to clarify the special condition. (Petition ¶ 14; LoFranco Br. Ex. B: Notice of Action, 1/28/94.) His "clarification" resulted in a revised, more sweeping special condition:

> You shall not associate with or ride motorcycles with any member, prospect, or associate member of the Hell's Angels motorcycle gang or any other outlaw motorcycle gang. You shall have no connection whatsoever with any of the Hell's Angels or any other outlaw motorcycle gang.

(*Id.; see also* Petition ¶ 15.)

LoFranco appealed to the National Appeals Board/Full Commission. (*See* Petition ¶ 16.) LoFranco asserted, *inter alia,* that this special condition was "not reasonably related to the nature and circumstance of the offenses for which he was convicted, ... or to his personal history and characteristics; and it is not reasonable to protect the public welfare." (LoFranco Br. Ex. D: Memorandum to National Appeals Board.) He further argued that the special condition was

---

4. In his brief to the Second Circuit, LoFranco stated that the Government's argument "ignores the fact that LoFranco was not a member of the two chapters alleged to be involved in the conspiracy at that time, which were the Binghamton and Troy chapters, later known as Mid–State.... LoFranco joined the New York City, or Manhattan, Chapter in 1977. He was not a member of Binghamton, Troy or Mid–State until 1984.... Lastly, it ignores the fact that, as previously stated, the United States Attorney and the Judge at LoFranco's plea stated [that] the Hell's Angels Motorcycle Club was not an ongoing criminal enterprise or a part of the LoFranco conspiracy." (*Id.* at 11–12.)

"void under the First Amendment, ... and that [the condition was] vague and could result in a violation of his right to due process of the law." (*Id.*)

The National Appeals Board/Full Commission affirmed the non-association condition in a one-page opinion. (LoFranco Br. Ex. E: Notice of Action on Appeal, 7/27/94.) The Commission ruled that the "purpose of this special condition is to encourage [LoFranco's] rehabilitation and to protect the public from a recurrence of criminal behavior on [LoFranco's] part." (*Id.*) The specific restriction against contact with the Hell's Angels was warranted because LoFranco used the Hell's Angels in facilitating his criminal enterprise, including illegal drug dealing and collection of drug sale debts. (*Id.*) The Commission noted that:

> [W]hile the Commission recognizes that many HAMC [Hell's Angels Motorcycle Club] members are law-abiding citizens, the likelihood that you would associate with a criminally-inclined individual through associating with the HAMC [Hell's Angels] or an outlaw motorcycle group is substantial enough that the condition prohibiting such association is appropriate.

(*Id.*)

The Commission answered LoFranco's concern that the condition was too vague to provide adequate guidance by stating that:

> [T]he wording of the special condition provides you with a sufficiently specific guide regarding prohibited conduct. Questions concerning the implementation of the special condition may generally be resolved with your probation officer, who may consult with the Commission's regional office if necessary.

(*Id.*)

### LoFranco's Current Habeas Petition

LoFranco was released on parole on May 1, 1994. He currently resides in Spring Valley, New York and his parole is supervised by the S.D.N.Y. Probation Department, Middletown Office. (Petition ¶¶ 9–11.)

On November 1, 1995, represented by Ronald L. Kuby of Kunstler & Kuby, Lo-

Franco brought the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Petition ¶ 18.) His petition alleged that the Parole Commission's special condition violated his First Amendment right to associate with the Hell's Angels and its members. (Petition ¶ 19.) LoFranco argues that the special condition is harsh and excessive and not reasonably related to his rehabilitation or to public protection (LoFranco Br. at 9–15); the special condition lacks a nexus between the crime he pled guilty to and the proscribed association (*id.* at 15–21); and finally that the special condition is vague and overbroad (*id.* at 21–24).

The Court heard oral argument on September 26, 1996. (*See generally* 9/26/96 Oral Arg. Tr.)

### ANALYSIS

## I. PRELIMINARY PROCEDURAL ISSUES

### A. A Writ of Habeas Corpus is the Proper Remedy for a Parolee

The writ of habeas corpus is available to any individual *"in custody* in violation of the Constitution or laws or treaties of the United States."* 28 U.S.C. § 2241(c)(3) (emphasis added); *see also* 28 U.S.C. §§ 2254(a), 2255. While a petition filed after the expiration of a sentence does not meet the "in custody" requirement, *see Maleng v. Cook,* 490 U.S. 488, 490–91, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989), actual physical imprisonment is not required, so long as a petitioner suffers from substantial restraints not shared by the general public. *See, e.g., Maleng v. Cook,* 490 U.S. at 491, 109 S.Ct. at 1925; *Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 1574–75, 36 L.Ed.2d 294 (1973).

Upon his release from prison in 1994, LoFranco was subject to a fourteen-year parole term. It is black letter law that a parolee is still "in custody" within the meaning of the habeas statute. *E.g., Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963) (parole meets the "in custody" requirement); *Maleng v. Cook,* 490 U.S. at 491, 109 S.Ct. at 1925

(citing *Jones* for proposition that parolee is in custody); *Scanio v. United States,* 37 F.3d 858, 860 (2d Cir.1994) (supervised release meets "in custody" requirement); *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 947 (2d Cir.1976) (habeas corpus petition is the proper relief to be sought by a parolee); *Schwartz v. United States,* 888 F.Supp. 24, 26 (S.D.N.Y.1995) (Sprizzo, J.) (same).

Therefore, a writ of habeas corpus is the appropriate remedy to be sought in this action.

### B. *LoFranco's Current Habeas Petition is Not Barred By His Previous Parole Petition*

■ The Government argues that the Court should exercise its discretion to not entertain the present habeas petition pursuant to 28 U.S.C. § 2244, which provides that:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus ... if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not heretofore presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry.

28 U.S.C. § 2244(a).[5] The Government's argument is unpersuasive.

■ When presented with successive habeas petitions, the "judge *is permitted, not compelled,* to decline to entertain such an application, and then only if he 'is satisfied that the ends of justice will not be served' by inquiring into the merits." *Sanders v. United States,* 373 U.S. 1, 12, 83 S.Ct. 1068, 1075, 10 L.Ed.2d 148 (1963) (emphasis added). If, as in the instant case, doubts arise as to whether the grounds of successive habeas petitions are different or the same, the dispute should be resolved in favor of the petitioner. *See id.,* 373 U.S. at 16, 83 S.Ct. at 1077.

LoFranco's previous habeas petition was based on the Parole Commission's use of his association with the Hell's Angels in arriving at his salient factor score used to determine his parole release eligibility date. LoFranco's current habeas petition, in contrast, challenges the special parole condition that he not associate with the Hell's Angels or any other "outlaw motorcycle gang." This special condition did not even exist when LoFranco filed his previous habeas petition. Thus, the legality of that condition could not have been determined by the Court in ruling on the first habeas petition.

As discussed below, however, the Court finds the Second Circuit's ruling on LoFranco's first petition relevant to decision of the merits of his present claim.

### C. *The Standard of Review for Habeas Petitions Challenging Parole Commission Decisions*

■ "Federal court review of parole commission decisions is extremely limited, because the commission has been granted broad discretion to determine parole eligibility." *Bialkin v. Baer,* 719 F.2d 590, 593 (2d Cir.1983) (citing 18 U.S.C. § 4218(d)).[6] The Second Circuit has ruled that the "appropriate standard for review of the [Parole] Commission's decisions is whether there has been an abuse of discretion. This means that a court may not substitute its own judgment for that of the commission, but may consider only whether there is a rational basis for the commission's decision." *Id.* (citations omitted); *see also, e.g., Iuteri v. Nardoza,* 732 F.2d 32, 37 (2d Cir.1984) (Court should determine " 'whether there is a rational basis in the record for the [Parole Commission's] conclusions embodied in its statement of rea-

---

5. The version of § 2244(a) quoted in text is that in effect prior to the April 24, 1996 Antiterrorism and Effective Death Penalty Act of 1996 amendments. The Court need not determine any issues as to the retroactivity of that Act, because the result is the same under either version of § 2244.

6. Parole was eliminated on a prospective basis in federal court as of November 1, 1987. Pub.L. 98–473, Title II, § 218(a)(5), Oct. 12, 1984, 98 Stat.2027. Nevertheless, parole and the parole statutes continue to apply to those granted parole before its elimination. Pub.L. 98–473, Title II, § 235(a)(1), Oct. 12, 1984, 98 Stat.2027.

sons.' ") [7]

LoFranco cites *United States v. Tolla,* 781 F.2d 29, 34 (2d Cir.1986), for the proposition that conditions that restrict a parolee's freedom of association "must be especially fine-tuned." (*See* 9/26/96 Oral Arg. Tr. at 7.) In *Tolla,* the Court upheld a restriction that prohibited a convicted perjurer from teaching young children, reasoning, *inter alia,* that denying her that satisfaction would serve as a deterrent against the temptation to perjure herself in the future. *Tolla*'s holding appears inconsistent with its "fine-tuned" language. Moreover, in *United States v. Schiff,* 876 F.2d 272, 275–76 (2d Cir.1989), the Second Circuit upheld associational restrictions on a probationer under the abuse of discretion, reasonable relation standard, without any reference to "fine-tuning." The Court believes that the abuse of discretion, reasonable relation standard is the correct one.[8]

## II. THE SPECIAL CONDITION OF Lo-FRANCO'S PAROLE THAT HE NOT ASSOCIATE WITH THE HELL'S AN-GELS IS APPROPRIATE BUT THE CONDITION THAT HE NOT ASSOCI-ATE WITH "OUTLAW MOTORCY-CLE GANGS" IS UNCONSTITUTION-ALLY VAGUE

### A. *The Parole Commission May Restrict A Parolee's Freedom of Association*

■ The Parole Commission is statutorily authorized to set "conditions of parole to the extent that such conditions are reasonably related to (1) the nature and circumstances of the offense; and (2) the history and characteristics of the parolee; and may provide for such supervision and other limitations as are reasonable to protect the public welfare." 18 U.S.C. § 4209(a).

■ Association with motorcycle groups has been protected under the freedom of association guaranteed by the First Amendment of the Constitution. *See United States v. Rubio,* 727 F.2d 786, 791 (9th Cir. 1983) ("the First Amendment protects [the] right to associate with one another and with the Hell's Angels Motorcycle Club."). As a condition of release on parole, however, the Parole Commission may restrict a parolee's access to otherwise lawful activities. *See, e.g.,* 18 U.S.C. § 4209(a); *Morrissey v. Brewer,* 408 U.S. 471, 481–82, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972) (holding that a parolee is properly subjected to "restrictions not applicable to other citizens"); *United States v. Polito,* 583 F.2d 48, 54 (2d Cir.1978); *Rizzo v. Terenzi,* 619 F.Supp. 1186, 1189 (E.D.N.Y.1985). As long as there is a reasonable nexus between the special condition of release and the crime for which the individual was convicted, a parolee may have his actions reasonably restricted in order to prevent his future criminality, and that includes depriving a parolee of his freedom of association. *See, e.g., Malone v. United States,* 502 F.2d 554, 556–57 (9th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); *Birzon v. King,* 469 F.2d 1241, 1243 (2d Cir.1972); *Hyser v. Reed,* 318 F.2d 225, 239 (D.C.Cir.), *cert. denied,* 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316 (1963). "[W]hen a convict is conditionally released on parole, the Government retains a substantial interest in ensuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts of the parolee." *Birzon v. King,* 469 F.2d at 1243.

Thus, for example, courts have long upheld the standard parole condition that the parol-

---

7. Decisions of the Parole Commission are committed to its discretion by law. 18 U.S.C. § 4218; *see also* 5 U.S.C. § 701(a)(2). The Supreme Court has held that when action is "committed to agency discretion by law," it is not subject to judicial review, unless it involves a constitutional violation. *See Webster v. Doe,* 486 U.S. 592, 601–03, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988). Where Congress intends to preclude judicial review of constitutional claims, there must be "clear and convincing evidence" of Congressional intent. *See Johnson v. Robison,*

415 U.S. 361, 373–74, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974). Because there is no evidence of such intent in the parole statutes, the Court may review constitutional claims arising from Parole Commission actions. *See Billiteri v. United States Bd. of Parole,* 541 F.2d at 944.

8. Moreover, even if *Tolla*'s "fine-tuned" standard were applicable, restriction on LoFranco's association with the Hell's Angels would satisfy it, for the reasons discussed below.

ee not associate with persons having a criminal record. *E.g., United States v. Albanese,* 554 F.2d at 546–47 & n. 6; *Birzon v. King,* 469 F.2d at 1243.

Courts also have upheld special restrictions on a parolee's association that manifested the required nexus. *See, e.g., United States v. Turner,* 44 F.3d 900 (10th Cir.1995) (person convicted of violating court order by obstructing abortion clinic prohibited while on probation from picketing in front of abortion centers); *United States v. Showalter,* 933 F.2d 573, 574–76 (7th Cir.1991) (a "skinhead" convicted of possession of an unregistered firearm was prohibited from associating with skinhead or Neo–Nazi organizations or members while on supervised release, because the court felt that such association would provoke a relapse into prior criminal lifestyle); *United States v. Schiff,* 876 F.2d 272, 276–77 (2d Cir.1989) (upholding special release conditions imposed on person convicted of tax evasion by purposely failing to file income tax returns that he was prohibited from associating with organizations advocating the violation of or non-compliance with tax laws); *United States v. Lawson,* 670 F.2d 923, 929–30 (10th Cir.1982) (same); *United States v. Gracia,* 755 F.2d 984, 991 (2d Cir. 1985) (upholding probation condition that Gracia not associate with persons identified as affiliated with terrorist activities). Courts have even upheld broad, seemingly overreaching conditions if there is a serious danger of reversion to criminal behavior. *See, e.g., Malone v. United States,* 502 F.2d at 557.[9]

As the Court stated in *Malone:*

> The conditions here involved are not intended to infer that each member of a group or organization with which the [petitioner] is forbidden to associate will necessarily lead him into criminal activities or be a bad influence. It is the incidental association with one or more who might lead him to future criminality that the Court seeks to prevent. If the [Parole Commission] could only prohibit active association with a group having an illegal purpose then the [Parole Commission] would be, in effect, restricted to the standard condition that the probationer obey the law.

*Malone v. United States,* 502 F.2d at 556.

More specifically, special conditions of supervised release restricting association with motorcycle gangs have been upheld in other circuits. *See, e.g., Behlke v. Jordan,* 83 F.3d 424, 1996 WL 208514 at *1 (7th Cir.1996) (unpublished disposition) (upholding a special condition that prohibited association with the Diablo Lobos motorcycle club); *United States v. Bolinger,* 940 F.2d 478, 480–81 (9th Cir.1991) (upholding a special condition that Bolinger "not participate in the activities, or be a member of any motorcycle clubs, including but not limited to the Dirty Dozen"); *United States v. Serrano,* 892 F.2d 1047, 1989 WL 155390 at *1 (9th Cir.1989) (unpublished disposition) (upholding special condition forbidding association with the Hell's Angels Motorcycle Club); *Murphy v. Getty,* CV–94–181–BU, slip opinion (D.Ore. Oct. 3, 1994) (unpublished; annexed as Appendix to Gov't Br.) (upholding a special condition that prohibited association with the "Gypsy Joker Motorcycle Club"); *Weggers v. United States,* C90–739Z, slip opinion (W.D.Wash. Nov. 14, 1990) (unpublished; annexed as Appendix to Gov't Br.) (upholding special condition that Weggers "shall not associate with or ride motorcycles with any member, prospect or associate member of the Bandido Motorcycle Gang or any other outlaw motorcycle gang.").

LoFranco claims that the special condition is unnecessary because he does not intend to commit any more crimes,[10] and because the Parole Commission did not articulate the

---

**9.** Malone was convicted of exporting firearms to the Irish Republican Army, and as part of the terms of his probation, he was not allowed, *inter alia,* (a) to participate in any Irish Republican Army movement, (b) to belong to any Irish organization, cultural or otherwise, (c) to belong to or participate in any Irish Catholic organizations or groups, (d) to visit any Irish pubs, or (e) to accept any employment that directly or indirectly asso-

ciates him with any Irish organization or movement. 502 F.2d at 555.

**10.** If a promise not to commit crimes were sufficient to make parole conditions unnecessary, there never would be parole conditions. LoFranco's argument on this point is silly.

manner in which the special condition would further his rehabilitation or protect the public. (*See* LoFranco Br. at 13–14.) LoFranco relies on *Sobell v. Reed*, 327 F.Supp. 1294 (S.D.N.Y.1971), in declaring that the reasoning employed by the Parole Commission in establishing the special condition was "silly" and "ludicrous." (LoFranco Br. at 13; LoFranco Reply Br. at 2.) In *Sobell*, the Court overturned a parole condition that neither served rehabilitative goals nor protected the public, even if it was determined to be related to the crime for which Sobell was convicted. (*Id.*) In *Sobell*, the petitioner was a co-defendant of Julius and Ethel Rosenberg and had been convicted of transmitting national defense information to the Soviet Union. 327 F.Supp. at 1295. As a condition of his parole, he was forbidden to leave the Southern District of New York without the written permission of his parole officer. *Id.* at 1296. He was denied permission to attend an anti-war demonstration in Washington and to speak on prison conditions at a meeting in Los Angeles sponsored by a communist newspaper. *Id.* at 1296–97. Because he had been granted prior permission to travel, the Court found that the reason for the denial at issue was the proposed content of his speech. *Id.* at 1302–03. The Court termed the Parole Commission's argument—that if he spoke before communists he might again become a spy—to be "silly." *Id.* at 1304.

LoFranco characterizes the Parole Commission's reasoning as to him to be similarly silly and tautological. (LoFranco Br. at 14.) The Court finds LoFranco's argument unpersuasive. The issue of whether the Parole Commission had a factual basis for restricting LoFranco's association with the Hell's Angels is addressed in the following section.

**B.** *The Parole Commission Properly Considered the Presentence Report in Determining the Special Conditions of LoFranco's Parole*

■■ Congress has mandated that the Parole Commission consider a wide range of factors in making parole determinations. In addition to presentence investigation reports, prison staff recommendations, official reports of a prisoner's prior criminal record, and

physical, mental or psychiatric examinations, the governing statute expressly requires the Parole Commission to consider "such additional relevant information concerning the prisoner ... as may be reasonably available." 18 U.S.C. § 4207; *see, e.g., Carmel v. Thomas*, 510 F.Supp. 784, 791 (S.D.N.Y.1981); *Payton v. Thomas*, 486 F.Supp. 64, 68 (S.D.N.Y.1980). The Parole Commission is concerned "with all facets of a prisoner's character, make-up and behavior." *Billiteri v. United States Bd. of Parole*, 541 F.2d at 944. "Any information which can inform the [Parole] Commission's decision and which it finds 'helpful' may be considered." *Carmel v. Thomas*, 510 F.Supp. at 791. "Determining the relevance and weight to be accorded these myriad factors is placed 'solely within the province of the [Commission's] broad discretion.'" *Carmel v. Thomas*, 510 F.Supp. at 791.

■■ As previously noted, the Parole Commission is required by statute to consider the presentence report. 18 U.S.C. § 4207; *see, e.g., Ochoa v. United States*, 819 F.2d 366, 372 (2d Cir.1987); *Billiteri v. United States Bd. of Parole*, 541 F.2d at 944; *Rosati v. Haran*, 459 F.Supp. 1148, 1160 (E.D.N.Y. 1977). The presentence report concerning LoFranco contained information about the FBI's investigation of LoFranco and the Hell's Angels:

[D]uring the course of the FBI's "Rough Rider" investigation, Special Agents of the FBI, working undercover and with an informant, purchased 16 pounds of methamphetamine, six ounces of cocaine and thousands of doses of LSD through the Mid-State Chapter of the Hell's Angels Motorcycle Club. It was revealed that members and associates of the [Hell's Angels] on the East Coast routinely distributed multiple pounds of methamphetamine at a time[,] as well as kilo quantities of cocaine and LSD in quantities exceeding one-quarter million dosage units....

Investigation further revealed that members also relied on the [Hell's Angels'] reputation for violence to control drug distribution territories, to eliminate competition and to collect drug-related debts.

(Cert. R. Ex. 6 at 2.) The presentence report further discloses that prosecutors considered LoFranco " 'the most significant drug trafficker in th[e] case' " and that LoFranco "used threats of violence as well as his membership in the [Hell's Angels] to collect drug-related debts." (*Id.* at 3.) The report concluded: "In short, the Prosecution portrays LoFranco as a very large scale drug trafficker who utilized his own reputation and that of the HAMC [Hell's Angels] to maintain a criminal enterprise." (*Id.* at 4.)

Thus, the Parole Commission could properly have concluded from LoFranco's past association with the Hell's Angels, as reported in the presentence report and charged in Count 2 of the indictment to which LoFranco pled guilty, that future association with the Hell's Angels might endanger LoFranco's rehabilitation by luring him back into drug-related crimes, thereby endangering the public. By restricting LoFranco's association with the Hell's Angels, the Parole Commission was reducing the risk that he might repeat his illegal behavior. Accordingly, there is a reasonable relationship between the condition of parole and the twin parole goals of rehabilitation and protection of the public.

LoFranco argued in his brief, however, that the Parole Commission could not consider his Hell's Angels membership because of his plea allocution denying the Hell's Angels' involvement in his crime. (LoFranco Br. at 13, 19–20.) At oral argument, LoFranco appeared to abandon this argument. (9/26/96 Oral Arg. Tr. at 12–13.) In any event, the Second Circuit already has rejected his argument. As discussed above, the Second Circuit upheld the Parole Commission's use of LoFranco's Hell's Angels membership to set a parole date above the guideline range, holding that:

[A]lthough membership in the Hell's Angels is, without more, not evidence of guilt at the trial level, a different standard applies when determining the appropriate sentence or parole.... [T]he Parole Commission was free to consider evidence of membership in an organization associated with drugs and violence, and that advocates murder because these crimes are relevant to the issue involved....

(*Id.* at 2–3.) The Second Circuit's ruling on LoFranco's first petition applies a fortiori here.

Indeed, at oral argument LoFranco conceded that a restriction on his association with the Mid–Hudson chapter of the Hell's Angels would be appropriate. (9/26/96 Oral Arg. Tr. at 14: "They could probably get away with prohibiting him from associating ... with members of that chapter for all time"; LoFranco Reply Br. at 6.)

LoFranco also argued in his brief that the New York City based Hell's Angels chapter is not the one that was mentioned in his indictment, and accordingly, it is inappropriate to restrict his ability to associate with that group. (*See* LoFranco Reply Br. at 6–7.) Unfortunately for LoFranco, however, the New York City Hell's Angels chapter has as colorful a history as the Albany/Troy chapter.

Members of the New York City chapter of the Hell's Angels has been before this Court several times in connection with serious criminal matters.[11] The nature of the criminal activities for which New York City chapter Hell's Angels members have been indicted and/or convicted is the same or similar to the charges on which LoFranco was convicted. Indeed, at oral argument LoFranco conceded that if the Parole Commission had engaged in appropriate fact finding, a restriction on

---

11. *See, e.g., United States v. Real Property Known as 77 East Third Street,* 849 F.Supp. 876, 878–79 (S.D.N.Y.1994) (forfeiture hearing for the N.Y.C. Hell's Angels clubhouse, which had been used in a drug manufacturing and distributing conspiracy; Court orders anonymous jury impaneled because of Hell's Angels' threats of violence and intimidation of witnesses); *Zito v. United States Dep't of Justice,* 89 Civ. 7234, 1990 WL 26309, at *1 (S.D.N.Y.1990) (member of New York City Hell's Angels chapter convicted of conspiracy to distribute methamphetamine); *United States v. Kittel,* 85 Cr. 428, 1986 WL 8238 at *1, *3 (S.D.N.Y.1986) (defendant and other New York City Hell's Angels chapter members indicted for drug conspiracy; also, defendant had provided falsified government identification documents for chapter members and committed numerous thefts through his involvement with the chapter; cooperating N.Y.C. Hell's Angels member admitted he sold drugs to Detroit Hell's Angels chapter), *aff'd,* 823 F.2d 545 (2d Cir.1987).

LoFranco's association with the New York City Hell's Angels chapter would be supportable. (9/26/96 Oral Arg. Tr. at 16–18.)

LoFranco's counsel argued, however, that a prohibition on associating with all Hell's Angels chapters throughout the country, imposed as a "matter of routine" by the Parole Commission, was indefensible. (*Id.* at 18.) The flaw in that argument, however, is that members of other Hell's Angels chapters throughout the country similarly have been involved in serious criminal matters. *See, e.g., United States v. Pasciuti,* 803 F.Supp. 499, 503–13 (D.N.H.1992) (providing a litany of unsavory acts committed by ten Hell's Angels chapters from the following states: California, Connecticut, Massachusetts, North Carolina, Ohio and South Carolina). Moreover, LoFranco overlooks that as a regular condition of parole, he is restricted to remain within the Southern and Eastern Districts of New York. (*See* Cert. R. Ex. 4.) Thus, his ability to belong to Hell's Angels chapters outside New York is already restricted by the general parole condition, which LoFranco has not challenged.[12]

Accordingly, the Court finds that the special condition that LoFranco not associate with any Hell's Angels chapter or member will further LoFranco's rehabilitation by keeping him away from elements that could lead him back to his prior criminal lifestyle. As well, denying LoFranco the ability to associate with such a group protects the public, as the special condition makes it less likely that LoFranco will commit such crimes against society again. Courts faced with similar parole conditions have approved restrictions on the parolee's association with specified motorcycle groups. *See* cases cited at pages 805–806, above.

Therefore, the Parole Commission did not act in an arbitrary or capricious manner when it considered LoFranco's ties to the Hell's Angels in establishing the special condition of his parole that he not associate with the Hell's Angels.

### C. The Special Condition of LoFranco's Parole About "Other Outlaw Motorcycle Gangs" is Unconstitutionally Vague, While the Hell's Angels' Condition is Sufficiently Specific

#### 1. The Jordan v. De George "Void for Vagueness" Test

The "void for vagueness" doctrine holds that "criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law." *Jordan v. De George,* 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951). "The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.,* 341 U.S. at 231–32, 71 S.Ct. at 708. The "essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Id.,* 341 U.S. at 230, 71 S.Ct. at 707; *see also, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

The "void for vagueness" doctrine is particularly important as applied to First Amendment issues, because "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.'" *Grayned v. City of Rockford,* 408 U.S. at 109, 92 S.Ct. at 2299.

A special condition of parole that is so vague that a person of common knowledge must guess at its meaning will be struck down as void for vagueness. *E.g., Birzon v. King,* 469 F.2d at 1243 (citing *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). Simply stated, parolees must know what actions a special condition prohibits in order to avoid due process violations.

---

**12.** The special parole restriction also prevents LoFranco from associating with any members of any Hell's Angels chapter. In theory, a member of a Hell's Angels chapter from, say, Ohio, might move to New York but not become a member of the New York City chapter; LoFranco would be prohibited from associating with him. Nevertheless, even in that unlikely scenario, because of the criminal history of members of Hell's Angels chapters across the United States, the Court cannot say this condition is unreasonable or arbitrary.

In applying the "void for vagueness" test to the special condition of LoFranco's parole, the Court must assess whether the condition is sufficiently determinate. If the general class of offenses to which the condition is directed is clearly within its terms, the condition will not be struck down as vague, even though there may be some questionable marginal cases. *See, e.g., United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). If the general class of potential parole violations can be made constitutionally definite by a reasonable construction of the special condition, this Court is under a duty to give the condition that construction. *See id.*

### 2. Application of the Vagueness Test to the Hell's Angels' Restriction

The special condition of LoFranco's parole prohibits him from associating with the Hell's Angels or other outlaw motorcycle gangs. (LoFranco Br. Ex. B: *Notice of Action,* 1/28/94.) As the Supreme Court held in *Arciniega v. Freeman,* a parole condition restricting "association" is not intended to apply to incidental contact in the course of work on a legitimate job for an employer. 404 U.S. 4, 4, 92 S.Ct. 22, 22, 30 L.Ed.2d 126 (1971) (per curiam). Only a parolee who intentionally avails himself of the opportunity to make contact with a prescribed party will be held to have violated such an association restriction. *See, e.g., United States v. Albanese,* 554 F.2d 543, 546 (2d Cir.1977) (upholding standard parole condition that parolee not associate with persons having a criminal record); *Birzon v. King,* 469 F.2d at 1243 & nn. 3–4 (same); *Alessi v. Thomas,* 620 F.Supp. 589, 593 (S.D.N.Y.1985) (same).[13]

Facially, the condition that he not associate with the Hell's Angels is sufficiently determinate because it prohibits a general class of conduct, namely associating with Hell's Angels motorcycle gangs or their members.[14] This is sufficiently specific to put LoFranco on notice of what is prohibited.

### 3. The Special Condition of LoFranco's Parole Concerning "Other Motorcycle Gangs" is Unconstitutionally Vague

The Court understands the "other outlaw motorcycle gangs" clause to be addressed to motorcycle groups that are involved in similar criminal activities to the Hell's Angels groups discussed above. *See, e.g., United States v. Schrock,* 855 F.2d 327, 330 (6th Cir.1988) ("Devil's Disciples" motorcycle gang members were involved in drug conspiracy charges); *United States v. Jackson,* 845 F.2d 1262, 1264 (5th Cir.1988) (discussing the "Bandidos Motorcycle Club," a national club comprised of many local chapters, which requires its prospective members to commit a felony witnessed by other gang members before they are granted membership); *United States v. Cole,* 704 F.2d 554, 556 (11th Cir.1983) ("Outlaw Motorcycle Club" members were convicted of prostitution conspiracy run by the club). Indeed, at oral argument Government counsel stated

**13.** At oral argument, LoFranco also challenged the additional sentence in the special parole condition that he "have no connection whatsoever with" the Hell's Angels or other outlaw motorcycle groups. (9/26/96 Oral Arg. Tr. at 28–29.) LoFranco argued that while "not associate" had a judicial gloss, it was entirely unclear what the "have no connection whatsoever with" sentence added. (*Id.*) The Government has conceded that "the [Parole] Commission views the phrase 'have no connection whatsoever with' to be coextensive with, and no broader than, 'associate.'" (10/1/96 letter to the Court from Assistant United States Attorney Martin Siegel, at 1.) LoFranco's counsel agreed at oral argument that if that were to be the Parole Commission's position, LoFranco would not further challenge the "no connection" restriction. (9/26/96 Oral Arg. Tr. at 40–41.)

**14.** LoFranco argues that because the Parole Commission admitted that not all members of

the Hell's Angels are criminals, the special condition is fatally overbroad. (LoFranco Reply Br. at 5–6.) He analogizes the special condition to a hypothetical in which a Methodist, who was convicted of conspiracy with other church members, is prohibited from associating with any Methodists. (LoFranco Br. at 20–21.) This argument is unpersuasive.

> The special condition of parole exists to keep LoFranco away from elements that are likely to encourage his return to criminal behavior. As discussed above, members of the Hell's Angels chapter in this and other districts have appeared before the courts for the same or similar crimes for which LoFranco was convicted. Accordingly, for the reasons discussed above, the restriction on LoFranco's association with members of the Hell's Angels is not fatally overbroad.

that it "seems clear that those [prohibited] organizations are not simply any motorcycle club, but rather ... the organizations like the Hell's Angels that have a history of association with criminality." (9/26/96 Oral Arg. Tr. at 31.)

It would appear that motorcycle groups such as the Capitalist Tools and the Harley–Davidson Owners' Group ("HOG")—whose members include motorcycle enthusiasts such as the late Malcolm Forbes (the publishing magnate), Arnold Schwarzenegger (the seven-time Mr. Olympia-turned-actor and head of the President's Council on Physical Fitness), August Busch IV (vice president of and heir to the Anheuser–Busch brewery fortune), and two United States Senators (Sen. Ben Nighthorse Campbell, R–Colo. and Sen. Larry Pressler, R–S.D.) [15]—should not be included in the associational restriction of LoFranco's parole. Nor, presumably, should the Blue Knights, "a motorcycle club of active-duty and retired police officers who like to do things for charity." *See Knights in Black Leather,* N.Y. Times, Aug. 12, 1996, at B2; *see also* 9/26/96 Oral Arg. Tr. at 30, 32. Association with these types of motorcycle groups does not bear a rational relation to the goals of LoFranco's parole, and therefore, the Parole Commission should not restrict LoFranco's liberty to ride with such organizations or their individual members.

The problem is that it is not possible to determine what the Parole Commission meant by an "outlaw" motorcycle gang. Indeed, when asked at oral argument whether the Blue Knights was an outlaw motorcycle gang, Government counsel said he did not know. (9/26/96 Oral Arg. Tr. at 32: "I should confess from the outset that I don't have the familiarity with the history of motorcycle gangs that my adversary does. I really don't know who the Blue Knights are.")

■ The Parole Commission stated that any (questions concerning the implementation of the special condition may generally be resolved with [LoFranco's parole] officer). (LoFranco Br. Ex. E: *Notice of Action on Appeal,* 7/27/94.) The Court, however, hesitates to grant a parole officer that arbitrary power, because as the Supreme Court warned in *Grayned:*

> [a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford,* 408 U.S. at 109–10, 92 S.Ct. at 2299; *see also, e.g., International Soc'y for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809, 822–23 (5th Cir.1979). The same problem arises with leaving the definition of outlaw motorcycle gangs to LoFranco's parole officer.

At oral argument, Government counsel argued that there should be a different vagueness standard for parole conditions than for criminal laws. The Court asked Government counsel to supplement the record with citation to any case that so holds. The cases cited by the Government, however, are inapposite. (*See* cases cited in 10/1/96 letter to the Court from AUSA Siegel.) For example, the Government contends that in *United States v. Albanese,* 554 F.2d 543, 547 (2d Cir.1977), the Court rejected a vagueness challenge in part because petitioner had access to probation officials. While the Court did refer to that in dicta, its holding was to approve a probation revocation for consistently having associated with a large number of convicted criminals over a period of years. Because the probation condition clearly applied to that conduct, the Court declined to consider whether it was overbroad on its face. *Id.* Similarly, the Government quotes *United States* v. *Gracia* for the proposition that "there is nothing wrong with giving the

---

**15.** Forbes rode with the "Rubbies" and "Capitalist Tools" motorcycle gangs until his death in 1990. *See* John Foyston, *Born to Be Filmed,* Portland Oregonian, May 3, 1996, at D1; L.J. Davis, *Robber Barons and Junk–Bond Kings,* Washington Post, Aug. 30, 1992, Book World section, at 7. Schwarzenegger rides regularly with a group of people involved in the entertainment business. See Karen Ridgeway, *Stars on Wheels Say Riding Offers 'an Escape',* USA Today, Dec. 6, 1988, at A6. Busch and Senators Campbell and Pressler are members of HOG. *See* Jerry Berger, *If You Can Afford Stamps, Please Don't Break* Chain, St. Louis Post–Dispatch, May 5, 1996, Everyday Magazine, at 2C; Frank A. Aukofer, *Capital Fun: Senator Rides Harley to Work,* Milwaukee Journal Sentinel, Aug. 14, 1995, at A6.

probation officer the initial power to specify those people with whom [petitioner] should not have contact, since any claim of abuse of this delegated authority can be reviewed by [the district court] under 18 U.S.C. § 3651." *Gracia,* 755 F.2d at 991. Again, this is taken out of context. First of all, review under 18 U.S.C. § 3651 only is applicable to probation conditions, not parole conditions. *See* page 35, below. Second, in Gracia the probation condition was that Gracia not associate "with any persons designated by name by his probation officer as being affiliated with ... terrorist activities." 755 F.2d at 991. Here, if the special parole condition had prohibited LoFranco from associating with "outlaw motorcycle gangs" named in advance by Lo-Franco's parole officer, the issue would be much closer, but that is not the condition imposed by the Parole Commission.

The Parole Commission should address this ambiguity in the "outlaw motorcycle gang" portion of the special condition, by rephrasing or eliminating that restriction, so that LoFranco will know what motorcycle groups the Parole Commission considers to be "outlaw motorcycle gangs." [16]

### D.  *The Relief That May Be Granted*

Unlike probation conditions, which are authored by the sentencing judge and may be corrected during the process of judicial review, parole conditions must be remanded to the Parole Commission. The rationale for this differentiation in treatment is statutorily grounded. For probation, 18 U.S.C. § 3651 provides that "the court may revoke or modify any condition of probation...." *See also United States v. Manfredonia,* 341 F.Supp. 790, 791 n. 1 (S.D.N.Y.), *aff'd,* 459 F.2d 1392 (2d Cir.), *cert. denied,* 409 U.S. 851, 93 S.Ct. 61, 34 L.Ed.2d 93 (1972). However, no such provision exists with respect to the statutes controlling the administration of parole.

The courts have held that the appropriate remedy is to remand to the Parole Commis-

sion for further consideration, and in the event that proper action is not taken within a reasonable period of time, the writ of habeas corpus may be granted. *E.g., Billiteri v. United States Bd. of Parole,* 541 F.2d at 946 ("If the court has found that the Board has abused its discretion, it may remand the case to the Board with instructions for correction. If the case was before the court on a petition for habeas corpus, it may order compliance within a reasonable period, failing which it may order the petitioner discharged from custody.").

Accordingly, I recommend that the Court remand the special condition to the Parole Commission for revision.

### CONCLUSION

For the reasons set forth above, I recommend that this Court remand LoFranco's special condition of parole to the Parole Commission for reconsideration in accordance with this Report and Recommendation. In the event that the special condition concerning other "outlaw motorcycle gangs" is not revised within sixty days, I recommend that the Court grant LoFranco's habeas corpus petition to the extent of freeing LoFranco from that part of the special condition as restricts his association with "outlaw motorcycle gangs." [17]

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See* also Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John E. Sprizzo, 40 Centre Street, Room 2201, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension

---

**16.** The Court notes that two decisions from outside this district upheld similar restrictions on associating with other outlaw motorcycle gangs. *See United* States v. *Bolinger,* 940 F.2d at 480–81, and *Weggers v. United States,* C90–739Z, slip opinion, both cited at page 805, above. Neither decision, however, discussed the vagueness issue, and the Court cannot determine if that issue was

raised in those cases. Because the cases do not contain any reasoning on this issue, the Court declines to follow them.

**17.** The Court wishes to publicly thank intern John Tyras of the University of Pennsylvania Law School for his assistance in connection with this Report and Recommendation.

of time for filing objections must be directed to Judge Sprizzo. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Oct. 9, 1996.